**POWDER RIVER BASIN RESOURCE COUNCIL, Plaintiff,**

v.

**Bruce BABBITT, Secretary of the United States Department of the Interior, Harry M. Snyder, Director of the Office of Surface Mining, United States Department of the Interior, Dennis Hemmer, Director, Wyoming Department of Environmental Quality, Defendants.**

No. 92–CV–1021–B.

United States District Court,
D. Wyoming.

Sept. 29, 1993.

Jon B. Huss, Casper, WY, for plaintiff.

Mary B. Guthrie, Sr. Asst. Atty. Gen., Office of the Atty. Gen., State of Wyo., Cheyenne, WY, for defendant Dennis Hemmer, Director, WY DEQ.

Carol A. Statkus, Asst. U.S. Atty. Gen., Cheyenne, WY, for federal defendants.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

The above-entitled matter having come before the Court upon plaintiff's Motion for Summary Judgment, defendants' memoranda in opposition thereto, defendants' Motions for Summary Judgment, and plaintiff's memoranda in opposition thereto, and the Court having reviewed the materials on file herein, having heard argument from the parties, and being fully advised in the premises; FINDS and ORDERS as follows:

### Background

The main issue in this case is whether rules adopted by the Wyoming Environmental Quality Council on October 22, 1992, pursuant to the Surface Mining Control and Reclamation Act (SMCRA), 30 U.S.C. §§ 1201 et seq. (1988), should be applied retroactively to May 20, 1983.

Section 503(a) of SMCRA, 30 U.S.C. § 1253(a), provides that a state may assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations upon submission to, and approval by, the Office of Surface Mining (OSM) of the state program. In 1979, Wyoming submitted to the OSM a proposed state program for state enforcement of the SMCRA. In 1980, the OSM determined that part of the state's proposed program could not be approved. The State of Wyoming revised and resubmitted its proposed program. The OSM conditionally approved the revised program, subject to the correction of several minor deficiencies. One of these deficiencies was that the state had not adopted a provision parallel to the federal regulation allowing an award of attorneys' fees. 43 C.F.R. 4.1294(b), (c) and (d) (1991). The OSM gave the state several extensions within which to satisfy this deficiency, the final deadline being May 20, 1983.

During the winter of 1991, plaintiff, Powder River Basin Resource Council (PRBRC), participated in an administrative action under the SMCRA involving the renewal and revision of a coal permit of the Black Thunder Mine in Campbell County, Wyoming. The parties settled the administrative action. On June 4, 1991, plaintiff petitioned the DEQ for an award of costs and expenses, including attorneys' fees. Defendant Hemmer, the Director of the DEQ, denied PRBRC's petition because at that time the DEQ rules did not authorize the award of attorneys' fees. The Environmental Quality Council affirmed the decision on February 3, 1993. That decision has been appealed to the Wyoming state courts.

On March 31, 1992, the plaintiff gave the federal defendants notice of its intent to sue as required by SMCRA, 30 U.S.C. § 1201, et seq. Upon notification, the Wyoming agency and the OSM began rulemaking procedures to correct the deficiency. On October 22, 1992, the Wyoming Environmental Quality Council adopted rules permitting the assessment of attorneys' fees against the state.

Nonetheless, plaintiff brought this suit claiming first, that the OSM failed to withdraw approval of Wyoming's state program and substitute federal enforcement as required by 30 U.S.C. § 1254(a) and 30 C.F.R. § 732.13(j) (1991), and second, that the Wyoming DEQ violated its agreement to correct deficiencies by May 20, 1983. Plaintiff asks the Court to compel the Secretary of the United States Department of the Interior and the Director of the OSM (1) to prepare, promulgate and implement a federal program for Wyoming, retroactive to May 20, 1983; or (2) to substitute direct federal enforcement of the portions of SMCRA regarding attorneys' fees, retroactive to May 20, 1983. In the alternative, plaintiff asks the Court to compel the Director of the Wyoming DEQ to satisfy the deficiencies in the State program with an effective date retroactive to May 20, 1983, so that plaintiff can be compensated for attorneys' fees from the SMCRA administrative action. Plaintiff also seeks an award of costs and attorneys' fees in this action.

The plaintiff, as well as the federal defendants, Manual Lujan, Secretary of the Interior, Harry Snyder, Director of the Office of Surface Mining, and the state defendant, Dennis Hemmer, Director of the Wyoming Department of Environmental Quality, have moved for summary judgment.

### Standard of Review

"By its very terms, [the Rule 56(c) ] standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct.

2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The trial court decides which facts are material as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510; *see also Carey v. United States Postal Serv.,* 812 F.2d 621, 623 (10th Cir.1987). Summary judgment may be entered "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Carey,* 812 F.2d at 623. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Carey,* 812 F.2d at 623. In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the nonmoving party. *Barber v. General Elec. Co.,* 648 F.2d 1272, 1276 n. 1 (10th Cir.1981).

### Discussion

### A. The Wyoming Defendants

■ This Court's jurisdiction in this case rests on § 520(a) of the SMCRA which provides:

[A]ny person having an interest which is or may be adversely affected may commence with a civil action on his own behalf to compel compliance with this Act ...

. . . .

(2) against the Secretary or the appropriate state regulatory authority *to the extent permitted by the eleventh amendment to the Constitution* where there is alleged failure of the Secretary or the appropriate State regulatory authority to perform any act or duty under this Act which is not discretionary with the Secretary or with the appropriate State regulatory authority. The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties.

30 U.S.C. § 1270(a) (emphasis added). Defendant Hemmer argues that he is entitled to a judgment as a matter of law because the Eleventh Amendment renders the state immune from suit. This Court finds his argument persuasive.

The Eleventh Amendment states:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Although the terms of the Amendment do not prohibit the suit of a state by its own citizens, the Supreme Court has repeatedly held that unless a state has consented to be sued, the state and its agencies are immune from suits brought in federal courts by the state's own citizens as well as by citizens of other states. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985); *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974); *Parden v. Terminal Ry. Co.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Further, the state's immunity cannot be circumvented merely by naming the state's officials in the suit when the state is the real party in interest. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Edelman*, 415 U.S. at 663, 94 S.Ct. at 1356. The Supreme Court has stated:

when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.

*Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *see also Edelman*, 415 U.S. at 663, 94 S.Ct. at 1355.

The Court finds instructive two Supreme Court cases which are very similar on their facts to the case at bar. In the first case, *Edelman v. Jordan*, the plaintiff challenged Illinois' administration of federal-state programs of Aid to the Aged, Blind, and Disabled, as being inconsistent with federal regulations. *Id.* at 654–55, 94 S.Ct. at 1351–52. The state regulations gave the state agency a longer period of time to determine eligibility for assistance than did the federal regulations. *Id.* The plaintiff, a recipient of assistance, sought injunctive relief and requested that the state pay benefits retroactively for the time it had not complied with the federal regulations. *Id.* at 653, 94 S.Ct. at 1351. The Supreme Court rejected the request of retroactive payment of fees on the grounds of sovereign immunity. *Id.* at 662–65, 94 S.Ct. at 1355–57.

In the second case, *Florida Dep't of Health v. Florida Nursing Home Ass'n*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981), the State of Florida had underpaid Medicare nursing home reimbursements due to defective state regulations. The Supreme Court, relying on *Edelman*, held that retroactive monetary relief was not available to the nursing homes because of the state's sovereign immunity. *Id.* at 150, 101 S.Ct. at 1034.

Similarly, in the case at bar, any retroactive award of attorneys' fees is barred by sovereign immunity. Here the State of Wyoming is the real party in interest. Mr. Hemmer is merely a nominal defendant. He does not have the power to promulgate rules or to determine their content. Wyo.Stat. § 35–11–109 (1977).[1] Further, any payment for attorneys' fees resulting from the retroactive application of the SMCRA provision would be made by the State of Wyoming, not Mr. Hemmer. Thus, sovereign immunity applies to bar the suit against Mr. Hemmer and the state.

**B. The Federal Defendants**

The federal defendants assert that the plaintiff's claim with respect to them must fail for lack of ripeness. This Court agrees.

---

1. The Wyoming Environmental Quality Council must adopt all rules relating to environmental issues. Wyo.Stat. § 35–11–112(a)(i) (1977).

The ripeness doctrine stems from Article III of the United States Constitution which limits the federal courts' jurisdiction to live "cases or controversies." In *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), the Supreme Court said that the basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way...." In *Gardner*, the Supreme Court fashioned a two-pronged test for the determination of ripeness. A court must evaluate "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515.

■■■ In the consideration of the first prong, fitness for judicial review, a court must examine factors such as whether the issue to be resolved is purely a legal one and whether there has been a final agency action. *Id.* In evaluation of the second prong, hardship to the parties, a court must consider whether the action has a "direct effect on the day-to-day business" of the parties and the possible harm to the parties by any delay in consideration of the issues. *Id.* at 152–53, 87 S.Ct. at 1517–18. The case at bar meets neither prong of the ripeness inquiry.

### 1. Fitness for Judicial Review

This case is not fit for judicial review. In *Sierra Club v. Yeutter*, 911 F.2d 1405, 1417 (10th Cir.1990), the Tenth Circuit explained what is meant by the administrative finality factor in the ripeness inquiry:

An administrative decision is final when it is definitive rather than tentative, when it has a 'direct and immediate ... effect on the day-to-day business' of the parties, and when it has 'the status of law' and requires immediate compliance.

(citing *Gardner*, 387 U.S. at 149–52, 87 S.Ct. at 1515–17). In the present action, the agency decision lacks finality because the federal defendants, having recently received Wyoming's program amendments, have yet to decide whether they are adequate. The OSM must first publish a notice in the Federal Register allowing for public comments. After consideration of all the comments and analysis of proposed amendments, the federal defendants will publish a final decision. *See* 30 C.F.R. § 732.17(f)–(h) (1991).[2] There is no reason to doubt that the federal defendants will assure, through appropriate procedures, that there is a conforming program for Wyoming. Since receipt of PRBRC's written notice, OSM has demonstrated its commitment to obtaining an approvable attorneys' fees provision for Wyoming through appropriate regulatory processes.[3] Until the final OSM decision is rendered, this Court can only speculate as to whether the plaintiff will be harmed by the state program's provision regarding attorneys' fees.

Furthermore, PRBRC cites no statutory authority for this Court to preempt the Secretary's role and discretion in approving or disapproving the Wyoming program amendments or in substituting a federal program. Indeed, if the Court were to usurp the Secretary's authority in the present case, it would be difficult to predict what decisions committed to federal agencies by statute could not be brought to this Court in the first instance

---

2. OSM is currently reviewing the proposed amendment and is preparing a notice for publication in the federal Register in compliance with 30 C.F.R. § 732.17(h)(1). Publication of that notice will commence the appropriate regulatory action to review the proposed state program amendment pursuant to 30 C.F.R. § 732.17(h), leading to a decision by the Director of the OSM to approve or disapprove the Wyoming program amendments.

3. Since receipt of PRBRC's written notice, OSM has worked with and encouraged the state's rulemaking proceedings to amend the state program.

*See* U.S. Exhibits 2, 6, 11, 14–16. For example, upon learning of a State bill that would have unduly limited the availability of attorneys' fees, the Acting Director of the OSM wrote the Wyoming DEQ advising such legislation would not be approved as part of the state program. Letter from W. Hord Tipton, Acting Director of the OSM, to Dennis Hemmer, Director of the Wyoming DEQ (January 27, 1993) (U.S. Exhibit 15). Upon receipt of subsequent proposed amendments, the OSM instituted proceedings pursuant to 30 C.F.R. § 732.17(h).

by a party wishing to bypass the statutory and regulatory procedures.

## 2. Hardship to the Parties

The plaintiff can show no hardship. As the Supreme Court has recently explained:

> Except where Congress explicitly provides for our correction of the administrative process at a higher level of generality, we intervene in the administration of the laws only when, and to the extent that, a specific "final agency action" has an actual or immediately threatened effect.... Such an intervention may ultimately have the effect of requiring a regulation, a series of regulations, or even a whole "program" to be revised by the agency in order to avoid the unlawful result that the court discerns. But it is assuredly not as swift or as immediately far-reaching a corrective process as those interested in systematic improvement would desire. Until confided to us, however, more sweeping actions are for the other Branches.

*Lujan v. National Wildlife Federation,* 497 U.S. 871, 894, 110 S.Ct. 3177, 3191, 111 L.Ed.2d 695 (1990) (citation omitted). In *Yeutter,* the Tenth Circuit faced the question whether the Forest Service's conduct with respect to federal reserved water rights was ripe for judicial review. The Court held that, given no imminent threat to the water values, delaying judicial consideration of the lawsuit would not impose a hardship on the parties but would instead benefit the government by allowing it to pursue alternative means of protecting water values. *Yeutter,* 911 F.2d at 1418.

The same is true in this case. There is no "direct effect on the day-to-day business" of the parties and there is no possible harm to the parties by any delay in this Court's consideration of the issues. None of the parties would suffer significant hardship if this Court's consideration is withheld until the Secretary has an opportunity to obtain public comment and to decide whether to approve or disapprove the State's final program amendment. Any injury that the PRBRC may suffer will come after the Secretary has completed the administrative actions. Indeed, the relief sought is precisely what the agency's administrative process is seeking to address. The extent to which the OSM's review of the Wyoming regulation will resolve the issues to the plaintiff's satisfaction is as yet unknown. The plaintiff is free to seek judicial review once the OSM's decision is final, should the decision fail to address the plaintiff's concerns. *See* 30 U.S.C. § 1276(a)(1).[4]

## C. Attorneys' Fees

■ Finally, the plaintiff claims that it is entitled to attorneys' fees in the instant case. Section 520(d) provides a statutory basis for an award of attorneys' fees in a citizens suit under SMCRA:

> The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including attorney and expert witness fees) to any party, *whenever the court determines such award is appropriate.*

30 U.S.C. § 1270(d) (emphasis added).

Section 520(b)(2) requires that a plaintiff file a 60–day notice of intent to sue prior to the initiation of a lawsuit under the SMCRA. The purpose of this requirement is to allow the agency an opportunity to take the appro-

---

4. Although the Court makes no determination on the merits of the case, it notes that retroactive application of regulations implementing the SMCRA is committed to the discretion of the Secretary. In *National Wildlife Federation v. Lujan,* 928 F.2d 453 (D.C.Cir.1991), the plaintiff challenged the Secretary's decision to make certain regulations apply retroactively only to July 6, 1984, rather than to August 3, 1977, the date the SMCRA was enacted. The D.C. Circuit upheld the discretion of the Secretary to limit the retroactive effect of his regulations. *Id.* at 461–63. *See also SEC v. Chenery Corp.,* 332 U.S. 194, 203–07, 67 S.Ct. 1575, 1580–83, 91 L.Ed. 1995 (upholding an expert agency's discretion over the retroactive effect of its ad hoc decisions) *reh'g denied,* 332 U.S. 783, 68 S.Ct. 26, 92 L.Ed. 367 (1947); *National Helium Corp. v. Federal Energy Administration,* 569 F.2d 1137, 1144–45 (Temp.Emer.Ct.App.1977) (upholding agency's retroactive application of regulation). When the Secretary makes a final decision after considering public comments on the amendment to the Wyoming State program, that decision may be scrutinized under the "arbitrary and capricious" standard of review prescribed by the SMCRA. *See* 30 U.S.C. § 1276(a)(1).

priate steps to remedy the cause of the complaint without the necessity of litigation. *Hallstrom v. Tillamook County,* 493 U.S. 20, 29, 110 S.Ct. 304, 310, 107 L.Ed.2d 237 (1989). "In many cases an agency may be able to compel compliance through administrative action, thus eliminating the need for any access to the courts." *Id.*

The facts in this case demonstrate that litigation was unnecessary. Upon PRBRC's notice to the state and federal defendants of the deficiency in Wyoming's state program, the defendants initiated corrective administrative proceedings. This is precisely what the notice of intent to sue provision envisioned to avoid needless litigation and the waste of judicial resources. Currently, the defendants are in the midst of completing their process. Awarding attorneys' fees in this instance would eviscerate the intent of the notice provision, encouraging more litigation by promising awards of attorneys' fees to those who wish to ignore an agency's public participation procedures.

**THEREFORE, IT IS**

**ORDERED** that defendants' motions for summary judgment be, and the same hereby are, ***GRANTED.*** It is further

**ORDERED** that plaintiff's motion for summary judgment be, and the same hereby is, ***DENIED.***