POWDER RIVER BASIN RESOURCE COUNCIL, Appellant (Petitioner),

v.

WYOMING ENVIRONMENTAL QUALITY COUNCIL, Appellee (Respondent).

No. 93–97.

Supreme Court of Wyoming.

Feb. 18, 1994.

Maynard D. Grant of Grant & Newcomb, Cheyenne, Reed Zars, Denver, CO, for appellant.

Joseph B. Meyer, Atty. Gen., Mary B. Guthrie, Deputy Atty. Gen., Thomas A. Roan, Asst. Atty. Gen., Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

Appellants Powder River Basin Resource Council (PRBRC) and the Wyoming Environmental Quality Council (EQC) jointly petitioned for certification of this appeal pursuant to WYO.R.APP.P. 12.09. We are asked to resolve whether the Wyoming Environmental Quality Act authorizes attorney fees against a government agency. EQC affirmed a decision by the Department of Environmental Quality (DEQ) denying attorney fees to PRBRC.

We reverse and remand.

Appellant phrases the issue as:

. [Whether] the Wyoming Environmental Quality Council ("EQC"), as a matter of law, incorrectly upheld the decision of the Wyoming Department of Environmental Quality ("DEQ") that found the agency had no authority to provide attorney's fees to citizen-group Powder River Basin Resource Council ("Powder River") after Powder River substantially prevailed in its administrative action against DEQ.

EQC presented four issues for review:

I. Whether the Environmental Quality Council's decision to deny the payment of attorneys fees because there were no rules to authorize payment was arbitrary, capricious or an abuse of discretion, or otherwise not in accordance with law.

II. Whether the Environmental Quality Council's decision to deny payment of attorneys fees to the Powder River Basin Resource Council should be affirmed because the award of attorneys fees for the kind of proceeding in which the Powder River Basin Resource Council participated is not authorized by Wyoming statute.

III. Whether the payment of attorneys fees, absent express statutory or regulatory authority, would have resulted in the abrogation of the state's sovereign immunity.

IV. Whether the Powder River Basin Resource Council waived its claim to attorneys fees when it settled the matter and dismissed its objection to the mine permit renewal.

**FACTS**

In February of 1991, a nonprofit citizen-conservation organization, PRBRC, challenged a DEQ decision which renewed a permit for Thunder Basin Coal Company (TBCC) to conduct strip mining operations at its Black Thunder Mine. At issue was whether DEQ could lawfully approve this particular permit renewal without providing the notice and opportunity for public participation which the law required of significant revisions to a permit. TBCC had proposed adding a large permanent water impoundment to the original permit's reclamation plan. DEQ had approved the proposal despite the fact that final design criteria had not been established for the impoundment. EQC scheduled a contested case hearing on PRBRC's objection to DEQ's action for March 12, 1991. However, negotiations were held and, on March 11, 1991, DEQ, TBCC, and PRBRC entered into a settlement agreement. The settlement agreement required DEQ to withdraw approval of the permanent impoundment that, in concept, had previously been approved. Further, the agreement required DEQ to afford the public proper notice of all future changes to a proposed mining operation. On April 24, 1991, the Council entered an order dismissing the contested case hearing because the dispute had been settled.

In June of 1991, counsel for PRBRC petitioned DEQ to pay its attorney fees under WYO.STAT. § 35-11-437(f) (1988). DEQ's initial response to the petition was to recommend that DEQ approve payment of the attorney fees. The Wyoming Mining Association (WMA) and TBCC objected to any payment of attorney fees under the act. WMA was permitted to intervene and TBCC was permitted to continue as a party and both submitted numerous memoranda, letters, and briefs opposing payment of the attorney fees. DEQ permitted WMA and TBCC to present arguments at an informal conference on September 30, 1991. Their primary arguments were that the statute did not authorize attorney fees since, in their view, permit review proceedings were not enforcement actions and the rules did not permit attorney fees against the state.

In his conclusions of law, the DEQ director rejected contentions that the "administrative proceeding" language of WYO.STAT. § 35–11–437(f) only applied to enforcement actions. The director concluded that PRBRC's objections and subsequent settlement with all parties constituted an administrative proceeding. The director concluded, as a matter of law, that the rules did not address an award in this type of case, and it was unclear whether the statute directs a decision contrary to the rules. The director denied an award of attorney fees to PRBRC. EQC affirmed the director's decision, and this appeal followed.

## DISCUSSION

PRBRC contends that the sum and substance of the DEQ director's decision which the EQC affirmed is that attorney fees were denied because agency rules were silent on the matter. We agree that the DEQ director denied attorney fees because he discerned from EQC's statement of principal reasons for adoption filed with the current rules an intent by EQC to adopt rules which restricted awards from DEQ. It was the director's specific decision that:

> The argument can be made that since the rules address Environmental Quality Council actions and the statute states that awards are to be determined by the Director that either the rules do not restrict an award not addressed by the rule or that the rules are not consistent with the law and I may ignore them. This I cannot do. The intent of the Environmental Quality Council is clear as outlined in the Statement of Reasons. The rules were appropriately adopted with full public participation. I cannot and will not presume to make a decision which contradicts properly adopted rules. While I may or may not agree with some decisions of the Environ-

mental Quality Council, unless their decision is clearly illegal on its face, I am clearly bound unless they are overturned by a higher decision making authority. In this case, while the argument can be made that the statute directs a decision contrary to the rules, I do not believe that is clear. Absent a clear statutory direction which contradicts the Environmental Quality Council's action and rules, I believe I am bound to follow the rules and Statement of Reasons.

The precise question before us is whether DEQ had the legal authority to pay PRBRC's attorney fees.[1]

It is fundamental in administrative law that a silent rule is not a bar to agency action which is authorized by statute. *See* WYO.STAT. § 16–3–114(c) (1990) (requiring reviewing courts to compel agency action unlawfully withheld); and *Jackson v. State,* 786 P.2d 874, 880 (Wyo.1990) (holding that an agency may not disregard a controlling statute). Resolution of whether an award of attorney fees against DEQ is authorized is necessarily a question of statutory interpretation. This is a question of law and our standard of review for any conclusion of law is straightforward. If the conclusion of law is in accordance with law, it is affirmed and if it is not in accordance with law, it is to be corrected. *Parker Land & Cattle Co. v. Wyo. Game & Fish Comm'n,* 845 P.2d 1040, 1042 (Wyo.1993).

WYO.STAT. § 35–11–437(f) [2] (1988) states:

> Whenever an order is issued under this section, at the request of any person, a sum equal to the aggregate amount of all costs and expenses (including attorney's fees) as determined by the director to have been reasonably incurred by such person for or in connection with his participation

---

1. In its reply brief, PRBRC argues that EQC had stipulated to just one issue in the joint petition certified by the district court to this court. PRBRC concludes that the stipulation precluded EQC from arguing the sovereign immunity and waiver issues and presenting arguments on the stipulated issue which DEQ's decision had rejected.

   WYO.R.APP.P. 12.09(a) states that "the reviewing court * * * shall be confined to the record * * * and to the issues set forth in the petition and

raised before the agency." The sovereign immunity issue was raised before EQC by DEQ and is entitled to our review. The waiver issue was not raised and is not considered by this court.

2. WYO.STAT. § 35–11–437(f) was amended in 1993. The act was signed into law in March of 1993, and provides that it shall apply to all actions filed on or after the effective date of this act. 1993 Wyo.Sess.Laws, ch. 154, § 3.

in such proceedings, including any judicial review of agency actions, may be assessed against either party as the court or the director deems proper. This subsection shall apply to any administrative proceeding under this act as it provides for the regulation of surface coal mining and reclamation operations in accordance with P.L. 95–87, as that law is worded on August 3, 1977.

In construing a statute, we determine whether the statutory language is clear or ambiguous. *Parker*, 845 P.2d at 1043. We first look to its language and if clear, we give the words their plain and ordinary meaning. *Parker*, 845 P.2d at 1043; *Keene v. State*, 812 P.2d 147, 150 (Wyo.1991). Statutory language is clear if reasonable persons are able to agree to its meaning with consistence and predictability. *Parker*, at 1043. In *Parker* we stated:

> We read the text of the statute and pay attention to its internal structure and the functional relation between the parts and the whole. We make the determination as to meaning, that is, whether the statute's meaning is subject to varying interpretations. If we determine that the meaning is not subject to varying interpretations, that may end the exercise, although we may resort to extrinsic aids of interpretation, such as legislative history if available and rules of construction, to confirm the determination.

*Parker*, 845 P.2d at 1045. EQC contends the statute does not authorize an award against DEQ because the agency was not a party; an enforcement order was not issued; and PRBRC's objections to the mine permit renewal and its settlement agreement did not constitute an administrative proceeding.

The thrust of EQC's argument is that the "administrative proceeding" language in the statute should be narrowly applied to only those enforcement actions against a per-

mittee which result in an order by the agency. EQC reasons that if the statute applies only in these situations, then settlement agreements would preclude attorney fees because an order was not issued. In the alternative, EQC claims that a mine permit renewal proceeding is not an enforcement action and the "parties" can necessarily only be the objector and the permittee, never the administrative agency. EQC relies upon *Utah International, Inc. v. Dep't of the Interior*, 643 F.Supp. 810 (D. Utah 1986). However, our reading of that case convinces us that the plain meaning of the statute is not subject to varying interpretations, and such a narrow interpretation is without merit. A Department of Interior decision factually similar to this case supports our view. *Natural Resources Defense Council, Inc.*, 96 Interior Dec. 83 (1989) (hereinafter *NRDC*).

Both of these cases interpreted the attorney fee provision of the Surface Mining Control and Reclamation Act of 1977 (SMCRA), P.L. 95–87, 91 STAT. 511, Title V, § 525(e) (1977) (codified as amended at 30 U.S.C. § 1275(e) (1989)). This act is the federal counterpart to Wyoming's statute.[3] *Belle Fourche Pipeline Co. v. State*, 766 P.2d 537, 544 (Wyo.1988). Since we have previously held that "there can be no question that Wyoming implemented the policy of the SMCRA," the decisions in *Utah International* and *NRDC* are instructive. *Belle Fourche* at 548; and see *Apodaca v. State*, 627 P.2d 1023, 1027 (Wyo.1981) (holding that when the legislature adopts a statute derived from another jurisdiction, case law followed in that jurisdiction construing the statute is persuasive authority).

The attorney fee issue arose in *Utah International* following a decision by the Department of Interior (Department) to designate certain lands as unsuitable for surface coal mining. *Utah International*, 643 F.Supp. at

---

**3.** The language of the federal act is similar to Wyo.Stat. § 35–11–437(f):

Whenever an order is issued under this section, or as a result of any administrative proceeding under this chapter, at the request of any person, a sum equal to the aggregate amount of all costs and expenses (including attorney fees) as determined by the Secretary to have been reasonably incurred by such person for or in connection with his participation in such proceedings, including any judicial review of agency actions, may be assessed against either party as the court, resulting from judicial review or the Secretary, resulting from administrative proceedings, deems proper.

30 U.S.C. § 1275(e) (1989).

812, 813. Environmental groups participated in the unsuitability proceedings and were later aligned with the Department during litigation to defend the decision. *Utah International* at 812, 813, 818, 820–21. There were also proceedings where the groups opposed the Department's motion to remand the unsuitability designation to a different Secretary of the Interior. *Id.* at 827. The *Utah International* court distinguished between the Department's role during the unsuitability proceedings and the Department's role when the Department moved for remand of the unsuitability designation decision. The court determined that attorney fees could not be awarded to the environmental groups against the Department when that Department was not a party and when the groups were aligned with the Department. *Id.* at 825; 820. In the first proceeding, the Department was not a "party" but rather a factfinder or legislator, and the environmental groups were ineligible for attorney fees. *Id.* at 825. In the second proceeding, the groups were not aligned with the Department; the Department was a party and the groups were eligible for attorney fees against the Department. *Id.* at 828.

 Although EQC correctly states that a statute which waives sovereign immunity is to be strictly construed in a narrow fashion in favor of the government, EQC misconstrues *Utah International* with its claim that the attorney fee provision does not apply to mine permit renewals. We agree with the *NRDC* case which considered similar arguments and interpreted the *Utah International* decision to state that permit reviews were proceedings related to the enforcement scheme of the Act.[4] *NRDC* at 94. DEQ was a party[5] in the proceedings which followed once PRBRC opposed DEQ's decision to renew the mine permit.

We conclude from the plain meaning of WYO.STAT. § 35–11–437(f) and the precedent discussed above that EQC's contention that no legal authority exists to award attorney fees to PRBRC is without merit. It is also noted that since EQC's decision, a rule authorizing such an award against the Department has been promulgated and adopted. *See Powder River Basin Resource Council v. Babbitt,* 834 F.Supp. 358 (D.Wyo.1993).

Although it is clear that PRBRC is eligible for attorney fees from DEQ under WYO.STAT. § 35–11–437(f), it is a separate determination whether PRBRC is entitled to attorney fees. PRBRC requests attorney fees incurred in the proceedings leading up to the settlement agreement and attorney fees incurred in appealing the denial of those attorney fees. The record indicates that DEQ has already determined PRBRC's successful negotiation of the settlement agreement[6] entitled them to attorney fees. DEQ must now determine whether PRBRC is entitled to attorney fees for this appeal.

Because WYO.STAT. § 16–3–114(c)(i) (1990) directs us to compel agency action unlawfully withheld, we remand to the agency for proceedings consistent with this opinion.

---

4. The *NRDC* decision stated in pertinent part:

   [W]e have no doubt that were the *Utah International* court faced with the issue in this case—whether a permit review proceeding falls within the scope of section 525(e)—it would reach the same result that we have. Our basis for that conclusion is that OSMRE seeks to exclude from the scope of section 525(e) a proceeding (permit review) which the court expressly indicated was included. The court noted that the Department had limited section 525(e) to "proceedings related to the enforcement scheme of the Act." 643 F.Supp. at 824. In a footnote to that statement, citing 30 USC §§ 1264, 1268(b), and 1275(a)(2) (1982), the court stated that "proceedings involving the Act's enforcement scheme are also necessarily adjudicatory proceedings." 643 F.Supp. at

824 n. 25. 30 U.S.C. § 1264 is the provision of SMCRA governing permit review.
   *NRDC,* 96 Interior Dec. at 94.

5. DEQ's Rules of Practice and Procedure for Contested Cases would have permitted the appearance and representation of DEQ as a party at the contested case hearing scheduled by the EQC. *See* RULES OF PRACTICE AND PROCEDURE APPLICABLE TO HEARINGS IN CONTESTED CASES, ch. II, § 6(a)(6) (DEQ, Aug. 17, 1982). DEQ also signed the settlement agreement with PRBRC and TBCC.

6. Resolution by a settlement agreement does not prevent eligibility for attorney fees. Wyoming's APA authorizes agencies to informally dispose of a contested case by agreed settlement in appropriate circumstances. WYO.STAT. § 16–3–107(n) (1990 & Supp.1993).