**POWDER RIVER BASIN RESOURCE COUNCIL, Plaintiff–Appellant,**

v.

**Bruce BABBITT, Secretary of the United States Department of the Interior; Robert Uram, Director of the Office of Surface Mining, United States Department of the Interior; Dennis Hemmer, Director of the Wyoming Department of Environmental Quality, Defendants–Appellees.**

No. 93–8117.

United States Court of Appeals, Tenth Circuit.

April 18, 1995.

---

Mark S. Squillace, Laramie, WY (Jon B. Huss, Casper, WY, with him on the briefs), for appellant.

Mary B. Guthrie, Deputy Atty. Gen. (Joseph B. Meyer, Atty. Gen., with her on the briefs), Office of the Atty. Gen., State of Wyo., Cheyenne, WY, for appellee Dennis Hemmer.

Jeffrey P. Kehne, Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, DC (Lois J. Schiffer, Acting Asst. Atty. Gen., Brian L. Ferrell, and Robert L. Klarquist, Environment & Natural Resources Div., U.S. Dept. of Justice, Washington, DC, and Richard McNeer, Office of the Sol., U.S. Dept. of the Interior, Washington, DC, with him on the briefs), for appellee Bruce Babbitt.

Before TACHA and McKAY, Circuit Judges, and HANSEN,* District Judge.

TACHA, Circuit Judge.

Plaintiff Powder River Basin Resource Council (PRBRC) filed suit under the citizen suit provision of the Surface Mining Control and Reclamation Act (SMCRA), 30 U.S.C. § 1270(a)(2), the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the act allowing citizens to compel federal governmental performance, 28 U.S.C. § 1361. Plaintiff alleged that the attorney's fees pro-vision of Wyoming's surface mining regulatory scheme violated established federal regulations and requested declaratory and injunctive relief. The district court granted defendant's request for summary judgment, holding that plaintiff's action against the state was barred by the Eleventh Amendment and that its case against the federal government was unripe. The court also denied plaintiff's request for attorney's fees in the case at bar. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## I. BACKGROUND

### A.

Before turning to plaintiff's allegations, we must first establish the regulatory framework as it existed when this litigation began. SMCRA permits a state to "assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations." 30 U.S.C. § 1253(a). Procedurally, any state wishing to control its surface coal mining operations was required to submit its plan for state control to the Secretary of the Interior (the Secretary) during an eighteen-month period beginning on August 3, 1977. *Id.* To gain exclusive control, however, the state has to demonstrate that it can carry out a number of tasks, including promulgating "rules and regulations consistent with regulations issued by the Secretary." *Id.* § 1253(a)(7).

According to federal regulations enacted under SMCRA, the Secretary can conditionally approve a program when the deficiencies were minor. 30 C.F.R. § 732.13(j). To obtain conditional approval, "[t]he State [must] agree[ ] in writing to correct such deficiencies within a time established by the Secretary and stated in the conditional approval." *Id.* § 732.13(j)(3). If the state does not take corrective action within the prescribed time period, the regulations direct the following:

> [T]he Director [of the Office of Surface Mining] shall notify the Secretary that the deficiencies have not been corrected and shall within 30 days—

---

* The Honorable C. LeRoy Hansen, District Judge, United States District Court for the District of New Mexico, sitting by designation.

(i) Withdraw approval of the State program in whole or in part, and specify the extent to which approval of the State program is being withdrawn;

(ii) Substitute direct Federal enforcement of those portions of the permanent regulatory program that the State has failed to implement;

(iii) Initiate procedures ... to withdraw State program approval and implement a Federal program for the State, including specifying necessary remedial actions to correct continued deficiencies; or

(iv) Take any combination of actions under paragraphs (j)(4) and (i) through (iii) of this section.

30 C.F.R. § 732.13(j)(4).

SMCRA allows a court, whenever it deems proper, to order one party to reimburse another party for its costs and expenses (including attorney's fees) incurred in pursuing a SMCRA claim. 30 U.S.C. § 1275(e). In accordance with this provision, the Secretary issued regulations specifying who may receive an award for costs and expenses. *See* 43 C.F.R. § 4.1294.

On August 15, 1979, Wyoming submitted its proposed regulatory plan under SMCRA. In 1980, the Secretary determined that the state's regulatory scheme was deficient in certain areas. *See* Conditional Approval of the Permanent Program Submission from the State of Wyoming Under the Surface Mining Control and Reclamation Act of 1977, 45 Fed.Reg. 78,637 (1980). One such deficiency was the absence of a state provision for attorney's fees. *Id.* at 78,674. The absence of an attorney's fee provision in Wyoming's plan conflicted with attorney's fees regulations previously enacted by the Secretary. *Id.* The state gained conditional approval, however, by agreeing to correct all of its plan's deficiencies by March 26, 1981. *Id.* at 78,683.

Over the next three years, Wyoming attempted to correct the deficiencies in its program. *See* 30 C.F.R. § 950.15. When necessary, the Secretary extended Wyo-

ming's deadlines for compliance. On September 27, 1982, the Secretary again ruled that Wyoming's program did not conform to the requirements of 43 C.F.R. § 4.1294 and extended Wyoming's deadline for compliance to May 20, 1983. *See* Removal of Condition of Approval of the Wyoming Permanent Regulatory Program and Extension of the Deadline for Wyoming to Satisfy a Condition of Approval, 47 Fed.Reg. 42,351 (1982). Wyoming took no further action regarding its provision for attorney's fees, however, until after plaintiff filed its notice of suit in the case at bar.

**B.**

In 1991 plaintiff participated in an administrative proceeding concerning the renewal and revision of the Black Thunder Mine's Campbell County coal permit. The parties to that proceeding settled. Plaintiff then petitioned the Wyoming Department of Environmental Quality (the DEQ) for costs and expenses, including attorney's fees. DEQ director Dennis Hemmer denied plaintiff's petition, citing the version of Wyoming's costs statute then in force, Wyo.Stat. § 35-11-437(f) (1988).

At this point the litigation split into two parts. Plaintiff appealed Hemmer's decision in Wyoming state court. It also notified defendants on March 31, 1992, of its intent to sue them in federal court. Following the sixty day notice period required by statute, *see* 30 U.S.C. § 1270(b)(1)(A), plaintiff filed the case at bar in federal district court.

Believe it or not, here's where the case gets complicated. In the sixty days between the notice of suit and the filing of suit in federal court, Hemmer proposed changes to Wyoming's attorney's fees provision. On May 16, 1992, the state published notice of its intent to engage in rulemaking, and on November 25, 1992, the state filed the revised rules.[1]

Each party filed for summary judgment in federal district court. On September 29,

---

**1.** Plaintiff asked the district court for leave to amend its complaint to include charges that Wyoming's revised guidelines were inadequate. The district court denied plaintiff's request.

Plaintiff has not appealed that ruling. We therefore will not consider any contentions that Wyoming's revised statute does not conform to the federal mandate.

1993, the district court granted summary judgment in favor of both the state and federal defendants. It held that the Eleventh Amendment barred plaintiff's case against the state because plaintiff asked for retroactive relief. The court also ruled that the case against the federal defendants was unripe in light of Wyoming's ongoing attempt to comply with federal directives. Finally, the court denied plaintiff's request for attorney's fees in the current federal action, stating that plaintiff should have refrained from filing suit after the state defendant's institution of rulemaking procedures. Plaintiff appealed.

As the parties were preparing their appeals to this court, two things happened. First, on January 24, 1994, the Secretary partially approved Wyoming's revised program, requiring a number of changes for full approval. 30 C.F.R. § 950.11. The Secretary ruled that Wyoming had to complete the revisions by June 1, 1994. *Id.* Second, the Wyoming Supreme Court decided plaintiff's appeal in its state court action. *See Powder River Basin Resource Council v. Wyoming Envtl. Quality Council*, 869 P.2d 435 (Wyo. 1994). The court determined that plaintiff was eligible for attorney's fees for its work in the Black Thunder Mine permit proceeding. *Id.* at 439. It remanded the case for a determination of whether the PRBRC was also entitled to attorney's fees for its state appeal. *Id.*

On April 13, 1994, Wyoming submitted the current version of section 35–11–437 to the Secretary for approval. Approval of Amendments and Removal of Condition of Program Approval, 59 Fed.Reg. 53,094–95 (1994) (to be codified at 30 C.F.R. §§ 950.11, 950.15). On October 21, 1994—approximately one month before oral argument in this case—the Secretary approved Wyoming's amendment. *Id.* at 53,097. The Secretary therefore lifted the condition relating to attorney's fees from SMCRA approval.

In their briefs, the parties raise issues concerning ripeness, mootness, standing, and the Eleventh Amendment. We must also address plaintiff's argument that it is entitled to attorney's fees in the case at bar. We first address these issues as they apply to the state and then turn to plaintiff's case against the federal government.

## II. THE CASE AGAINST THE STATE DEFENDANTS

Plaintiffs asked for declaratory and injunctive relief and for reimbursement of their costs incurred in litigating the case at bar. Although we find that the district court had jurisdiction over the case when it was filed, we conclude that the district court lost its power to hear the case when plaintiff's injury was eradicated. Because jurisdiction was present at the beginning of the suit, however, we nonetheless address plaintiff's request for attorney's fees. *Cf. Clark v. Busey*, 959 F.2d 808, 810 (9th Cir.1992) ("Subject matter jurisdiction to decide the merits of the underlying action is a 'condition precedent' to an award of fees or costs under the EAJA."); *People Organized for Welfare & Employment Rights v. Thompson*, 727 F.2d 167, 169 (7th Cir.1984) (holding that plaintiffs could not obtain attorney's fees unless they "had standing to bring [the] lawsuit in the first place").[2]

### A.

▪ The Eleventh Amendment prohibits federal courts from entertaining suits "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Federal courts will therefore hear suits initiated against a state only when that state has consented to suit in federal court or Con-

---

2. The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, explicitly includes a requirement that the court have jurisdiction to hear a case before issuing a cost award. *See* 28 U.S.C. § 2412(d)(1)(A). Courts have applied this same prerequisite in cases without the EAJA's language. *See Thompson*, 727 F.2d at 169 (jurisdiction is necessary for award under 42 U.S.C.

§ 1988). This requirement would logically also apply to the SMCRA statute, which allows an award of costs in an "action brought pursuant to subsection (a)." 30 U.S.C. § 1270(d). If plaintiff files suit but jurisdiction never attaches, plaintiff effectively has not brought suit in accordance with SMCRA's provisions.

gress has unequivocally expressed its intent to abrogate the state's immunity. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984).[3] This prohibition applies to suits brought by a state's own citizens as well as by citizens of another state. *See Hans v. Louisiana,* 134 U.S. 1, 11–14, 10 S.Ct. 504, 505–06, 33 L.Ed. 842 (1890).

■ Citizens may, however, challenge a state official's action in enforcing state law. *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). But when a suit names a state official as the defendant, the Eleventh Amendment still bars the action if "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Whether the state is the real party in interest turns on the relief sought by the plaintiffs. Suits that seek prospective relief are deemed to be suits against the official, while suits that seek retroactive relief are deemed to be suits against the state. *Edelman v. Jordan,* 415 U.S. 651, 664–66, 94 S.Ct. 1347, 1356–57, 39 L.Ed.2d 662 (1974). We review *de novo* a state's claim that a suit is barred by the Eleventh Amendment. *Ponca Tribe v. Oklahoma,* 37 F.3d 1422, 1427 (10th Cir. 1994), *petition for cert. filed,* 63 U.S.L.W. 3477 (U.S. Dec. 9, 1994) (No. 94–1029).

■ Plaintiff here asked for two forms of relief. It requested a judgment stating that Wyoming's state attorney's fees program is invalid because the state failed to satisfy the terms of the 1983 conditional approval. In the alternative, plaintiff asked the court to construe Wyoming's provisions as consistent with 43 C.F.R. § 4.1294(b), (c), and (d), and apply such provisions retroactively to May 20, 1983. The district court held that the Eleventh Amendment barred suit because plaintiff asked for relief "retroactive" to 1983.

Assuming *arguendo* that plaintiff's second request included an aspect of retroactive relief under *Edelman,* all forms of relief were not barred in this case. Plaintiff asked for declaratory relief under 28 U.S.C. § 2201.

Declaratory judgments are construed as retroactive relief only when "[t]here is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction." *Green v. Mansour,* 474 U.S. 64, 73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). Declaratory relief is prospective when sought to prevent a state's current violation of the law. And the Eleventh Amendment clearly permits relief against state officials "to prevent a continuing violation of federal law." *Id.* at 68, 106 S.Ct. at 426.

Plaintiff alleged in its complaint that Wyoming's attorney's fees provision violated federal SMCRA law. At the time plaintiff brought suit, the allegedly deficient attorney's fees statute was still in effect. Wyo. Stat. § 35–11–437(f) (1988). Thus, plaintiff alleged a continuing violation of SMCRA. Because plaintiff's request sought prospective, as opposed to retroactive, relief, the claim was not barred by the Eleventh Amendment, and the district court wrongly granted summary judgment to the state on that ground.

### B.

■ We next face the issue of whether the action was ripe when originally filed. Because ripeness is a jurisdictional issue, our standard of review is *de novo.* *Reahard v. Lee County,* 30 F.3d 1412, 1415 (11th Cir. 1994). To ensure that a case is ripe, a court should "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Lab. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *see also Sierra Club v. Yeutter,* 911 F.2d 1405, 1415 (10th Cir.1990). In applying this test, we must "caution against a rigid or mechanical application of a flexible and often context-specific doctrine." *Id.* at 1417.

■ We first turn to the "fitness for judicial resolution" prong. This prong requires us to consider "both the legal nature of the question presented and the finality of the administrative action." *Id.* In this case, both factors confirm that plaintiff's action

---

3. SMCRA does not abrogate states' sovereign immunity. It explicitly allows suit only "to the extent permitted by the eleventh amendment." 30 U.S.C. § 1270(a)(1).

was ripe when originally filed. "Where disputed facts exist and the issue is not purely legal, greater caution is required prior to concluding that an issue is ripe for review." *Id.* But the question here was purely legal: Plaintiff asked the court to focus its inquiry on whether Wyo.Stat. § 35–11–437(f) violated federal law and whether Wyoming had further violated federal law by refusing to satisfy the requirements of its conditional approval. This judgment would be based almost exclusively on Wyoming's legal duties under federal law.

■ Defendant contends that the issue was not final because the state had initiated proceedings to change section 35–11–437(f). We disagree. In most cases involving issues of ripeness, the administrative rule is not final, *see Sierra Club,* 911 F.2d at 1418, or the agency retains discretion over whether to enforce the rule, *see Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 163, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967). By contrast, section 35–11–437(f) was-a Wyoming statute. It had the force of law and had been applied to plaintiff in this case. Even though defendant began proceedings to change the statute, those proceedings did not lessen the force of the statute, and there was no guarantee that defendant would actually alter the provision.

■ Moving to the second prong of *Abbott Laboratories,* it is clear that plaintiff would suffer hardship. In evaluating potential hardship to the parties, a court should consider (1) whether the challenged rule has had a direct impact on the party challenging the rule, and (2) the possible harm to the parties of delaying judicial consideration. *Yeutter,* 911 F.2d at 1415. Because the state denied attorney's fees to plaintiff, its failure to correct its allegedly deficient provision had a direct impact on plaintiff's activities. Delaying judicial consideration would further harm plaintiff. We therefore hold that the case was ripe when filed.

### C.

Although we have determined that plaintiff's suit against the state was ripe when filed and was not barred by the Eleventh Amendment, we must now address whether plaintiff lost standing because of the Wyoming Supreme Court's decision in 1994. *See Powder River Basin,* 869 P.2d at 435. Although the parties did not raise this issue in district court, "[s]tanding may be raised at any time in the judicial process." *Board of County Comm'rs v. W.H.I., Inc.,* 992 F.2d 1061, 1063 (10th Cir.1993).

We first examine whether a party can lose standing in the middle of a lawsuit. Defendants do not dispute that plaintiff had standing when it filed suit. Thus, although "[s]tanding represents a jurisdictional requirement which remains open to review at all stages of the litigation," *National Org. for Women, Inc. v. Scheidler,* —— U.S. ——, ——, 114 S.Ct. 798, 802, 127 L.Ed.2d 99 (1994), we must still answer the question of whether standing is *measured* only when a suit is filed or throughout the litigation.

In diversity jurisdiction cases, the Supreme Court has stated that, as a general matter, "jurisdiction is tested by the facts as they existed when the action is brought." *Smith v. Sperling,* 354 U.S. 91, 93 n. 1, 77 S.Ct. 1112, 1113 n. 1, 1 L.Ed.2d 1205 (1957). Thus, "the jurisdiction of the Court depends upon the state of things at the time of the action brought, and ... after vesting, it cannot be ousted by subsequent events." *Mollan v. Torrance,* 22 U.S. (9 Wheat.) 537, 539, 6 L.Ed. 154 (1824); *see also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 69, 108 S.Ct. 376, 387, 98 L.Ed.2d 306 (1987) (Scalia, J., concurring). The Fifth Circuit recently followed this language in a federal question case, holding that "with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction." *Carr v. Alta Verde Indus., Inc.,* 931 F.2d 1055, 1061 (5th Cir. 1991); *see also Senter v. General Motors Corp.,* 532 F.2d 511, 520 (6th Cir.) ("Standing is determined as of the date the suit is filed."), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976).

■ More recently, however, in a case grounded in federal question jurisdiction, the Supreme Court stated that "the plaintiff

must maintain a 'personal stake' in the outcome of the litigation *throughout its course."* *Gollust v. Mendell,* 501 U.S. 115, 126, 111 S.Ct. 2173, 2180, 115 L.Ed.2d 109 (1991) (emphasis added).[4] We believe this view better represents the principles underlying standing. *Accord City Communications, Inc. v. City of Detroit,* 888 F.2d 1081, 1086 (6th Cir.1989) ("A plaintiff must maintain standing throughout all stages of his litigation."). Standing is a limitation on a court's jurisdiction. *See American Postal Workers Union v. United States,* 861 F.2d 211, 213 (9th Cir.1988). When a plaintiff no longer has an injury, the Article III requirements of a case or controversy are no longer met. In diversity cases, like *Smith* and *Mollan,* courts look to prevent defendants from conspiring to deprive the court of jurisdiction by moving into the state following the filing of suit. In contrast, if a plaintiff is no longer injured, courts lack a true "case or controversy" upon which to render a decision. We therefore hold that a plaintiff must maintain standing at all times throughout the litigation for a court to retain jurisdiction.

We now turn to whether plaintiff lost its standing when it recovered attorney's fees in state court. The constitutional minimum of standing contains three elements. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally-protected interest." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The "injury in fact" must be both (1) concrete and particularized and (2) actual or imminent. *Id.* Second, the court must find a causal connection linking defendant's action to the injury. *Id.* "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 43, 96 S.Ct. 1917, 1924, 1926, 48 L.Ed.2d 450 (1976)); *see also Mount Evans Co. v. Madigan,* 14 F.3d 1444, 1450 (10th Cir.1994) (restating the three *Lujan*

factors). The party asserting jurisdiction "bears the burden of establishing these elements." *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2136.

■ Plaintiff no longer meets the first prong of the *Lujan* test. To establish an injury in fact, "the plaintiff must show 'a distinct and palpable injury to itself.'" *Wyoming ex rel. Sullivan v. Lujan,* 969 F.2d 877, 881 (10th Cir.1992) (quoting *Glover River Org. v. United States Dep't of Interior,* 675 F.2d 251, 254 (10th Cir.1982)). When plaintiff filed suit, its injury was the state's refusal to reimburse plaintiff for its attorney's fees. The Wyoming Supreme Court's decision ordered defendant to pay those attorney's fees, forcing defendant to remedy plaintiff's continuing injury. Plaintiff at that point lost the injury on which its standing was originally based.

Plaintiff's sole remaining injury is the generalized assertion that defendant was not in compliance with the federal mandate. That general complaint does not distinguish plaintiff from any other Wyoming citizen and is insufficient to grant standing. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983) ("Absent a sufficient likelihood that he will again be wronged in a similar way, [plaintiff] is no more entitled to an injunction that any other citizen of Los Angeles."); *Sierra Club v. Morton,* 405 U.S. 727, 735, 92 S.Ct. 1361, 1366, 31 L.Ed.2d 636 (1972) ("[T]he party seeking review [must] be ... among the injured.").

### D.

Having determined that plaintiff originally had standing but lost it after the Wyoming Supreme Court's decision deprived it of an injury in fact, we must still address whether plaintiff is entitled to attorney's fees incurred up to the time at which it lost standing.[5] SMCRA allows a court to "award costs of

---

4. Similarly, the Supreme Court also recently concluded that a case was unripe because of events that occurred subsequent to the filing of suit. *See Anderson v. Green,* — U.S. —, —, 115 S.Ct. 1059, 1060, 130 L.Ed.2d 1050 (1995) (per curiam).

5. Although we have determined that plaintiff lost standing, we note that "the expiration of the underlying cause of action does not moot a controversy over attorney's fees already incurred." *Dahlem v. Board of Educ.,* 901 F.2d 1508, 1511 (10th Cir.1990).

litigation (including attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 30 U.S.C. § 1270(d). When examining claims under section 1270(d), we review the decision to determine "whether the district court applied improper legal standards or abused its discretion." *Save Our Cumberland Mountains, Inc. v. Hodel,* 826 F.2d 43, 47 (D.C.Cir. 1987), *vacated on other grounds,* 857 F.2d 1516 (1988) (en banc).

■ Unless one of the statute's exceptions is met, no plaintiff may bring an action prior to sixty days after notice is provided to the appropriate agency. 30 U.S.C. § 1270(b). This notice period is mandatory and cannot be disregarded by a plaintiff. *See Hallstrom v. Tillamook County,* 493 U.S. 20, 26, 110 S.Ct. 304, 308, 107 L.Ed.2d 237 (1989). Here, as instructed by statute, plaintiff allowed the notice period to elapse before filing suit.

■ The district court, however, ruled that plaintiff should never have brought suit because defendant started proceedings to correct the alleged deficiency. It therefore barred the recovery of attorney's fees. We believe this result misconstrues the effect of SMCRA's notice provision.

Section 1270(b) is merely a procedural requirement. It affects the litigation only if plaintiff files prematurely, thereby forcing the court to dismiss the action. Notice serves two important and interrelated purposes. "First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits." *Hallstrom,* 493 U.S. at 29, 110 S.Ct. at 310. "Second, notice gives the alleged violator 'an opportunity to bring itself into *complete compliance* with the Act and thus likewise render unnecessary a citizen suit.'" *Id.* (emphasis added) (quoting *Gwaltney,* 484 U.S. at 60, 108 S.Ct. at 383). These interests are protected not through the statute itself but through the Article III requirement of a case or controversy. When the violator brings itself into complete compliance during the sixty-day period, the plaintiff is not procedurally barred from bringing the suit. Rather, the district court will dismiss the citizen suit as moot.

Here, Wyoming did not bring itself into complete compliance—or even partial compliance—during the notice period. It merely began procedures which had the potential to result in a new attorney's fee rule. The allegedly deficient rule, however, was still in effect when plaintiff filed suit. The district court therefore abused its discretion by denying plaintiff's attorney's fees against the state for its stated reasons.

■ The question remains, however, whether plaintiff should nevertheless be denied attorney's fees on other grounds. When, as here, there has been no judicial determination on the merits, a plaintiff may prevail for attorney's fees purposes if she can show "(1) that [the] lawsuit is causally linked to securing the relief obtained and (2) that the defendant's conduct in response to the lawsuit was required by law." *J & J Anderson, Inc. v. Town of Erie,* 767 F.2d 1469, 1473 (10th Cir.1985) (citing *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978)); *see also Hewitt v. Helms,* 482 U.S. 755, 760–62, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987) (when defendant's voluntary action produces some or all of the relief sought by plaintiff, plaintiff has prevailed); *Collins v. Romer,* 962 F.2d 1508, 1512 (10th Cir.1992) (reiterating the applicability of the *Nadeau* test).

In prior cases, this court has applied the two-part *Nadeau* test when the statute required the recipient of attorney's fees to "prevail." *See, e.g., Collins,* 962 F.2d at 1511 (using *Nadeau* test to examine an award under 42 U.S.C. § 1988); *Foremaster v. City of St. George,* 882 F.2d 1485, 1488 (10th Cir.1989) (same), *cert. denied,* 495 U.S. 910, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990). Even in statutes without a prevailing party requirement, however, the party requesting attorney's fees must achieve some success to be eligible for an attorney's fees award. *See Ruckelshaus v. Sierra Club,* 463 U.S. 680, 688, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). Because under either type of statute the plaintiff must be successful—and the *Nadeau* test is designed to ferret out any success by a plaintiff—we hold that the same catalyst

test applies to attorney's fees requests under 30 U.S.C. § 1270(d).

Plaintiff claims that it was a "catalyst" for the change in Wyoming's attorney's fees provision. The first prong of the *Nadeau* test requires a factual determination made by the district court; the second prong poses a legal question. *Collins,* 962 F.2d at 1511. Because the district court never reached this question, we remand for a determination of whether plaintiff's action fits the legal definition of a "catalyst." If so, the district court may assess costs against the state in accordance with 30 U.S.C. § 1270(d).

## III. THE CASE AGAINST THE FEDERAL DEFENDANTS

### A.

We next examine whether the case against the federal defendants is moot. The jurisdiction of federal courts extends only to actual cases and controversies. U.S. Const. art. III, § 2, cl. 1; *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2796, 49 L.Ed.2d 683 (1976). Federal courts therefore "avoid advisory opinions on abstract propositions of law." *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 202, 24 L.Ed.2d 214 (1969).

The federal defendants contend that this case no longer presents a live controversy, rendering plaintiff's claim moot.[6] "A claim is moot when no reasonable expectation exists that the alleged violation will recur and interim relief of events have eliminated the effects of the alleged violation." *Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1524 (10th Cir.1992). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson,* 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 1216 n. 10, 39 L.Ed.2d 505 (1974).

In this case, plaintiff asks the court to enforce the allegedly mandatory requirements of 30 C.F.R. § 732.13(j)(3). Even if the steps contemplated by section 732.13(j)(3)

are required, however, they apply only when the Secretary has conditionally approved the state's program. Here, the Secretary has determined that the state has fully complied with SMCRA's requirements and therefore removed conditional approval. *See* 59 Fed. Reg. 53,094. This court can offer no relief. The case is moot.

### B.

Plaintiff also asks for attorney's fees against the federal government under 30 U.S.C. § 1270(d). Although we remand for a determination of whether attorney's fees may appropriately be assessed against the state, the same determination is not necessary against the United States.

Section 1270(d) allows a court to assess costs against a party whenever it determines an award is appropriate. Nevertheless, a party must achieve at least some measure of success to warrant an attorney's fees award. *See Ruckelshaus,* 463 U.S. at 688, 103 S.Ct. at 3279. Here, plaintiff did not extract any of the requested relief from the United States. Plaintiff asked the court to order the federal defendants to take one of the allegedly mandatory requirements in 30 C.F.R. § 732.13(j)(4). The only action taken by the federal defendants, though, was approving Wyoming's revised attorney's fees plan. This action did not conform to any of the relief requested by plaintiff. Plaintiff did not prevail and therefore is not entitled to recover attorney's fees from the federal defendants.

## IV. CONCLUSION

We dismiss the requests for declaratory and injunctive relief against both the state and federal defendants. Plaintiff lacks standing to continue its suit against the state defendants, and the case against the federal defendants is moot. We REMAND the case to the district court, however, for a determination of whether plaintiff is entitled to re-

---

6. The federal defendants also claim that (a) the case was unripe and (b) plaintiff lost its standing or the case was moot following the Wyoming Supreme Court's decision. Because we resolve plaintiff's claims against the federal defendants on other grounds, we need not address these issues.

cover costs from the state under 30 U.S.C. § 1270(d).