UNION PACIFIC RAILROAD COMPANY; and Missouri Pacific Railroad Company, Plaintiffs,

v.

R.M. "Johnnie" BURTON, Director, Wyoming Department of Revenue; Wyoming Department of Revenue; Albany County; Campbell County; Carbon County; Converse County; Laramie County; Lincoln County; Natrona County; Niobrara County; Sweetwater County; Uinta County; and the State of Wyoming, Defendants.

No. 96–CV–163–J.

United States District Court, D. Wyoming.

Dec. 24, 1996.

William J. Thompson, Dray, Thomson & Dyekman, Cheyenne, WY, Eugene A. Ritti, Richard G. Smith, Hawley, Troxell, Ennis & Hawley, Boise, ID, for plaintiffs.

William U. Hill, Wyoming Attorney General, Vicci M. Colgan, Senior Assistant Attorney General, Michael L. Hubbard, Deputy Attorney General, Cheyenne, WY, for Defendant Burton, as Director of Wyoming Department of Revenue, State of Wyoming, Department of Revenue and State of Wyoming.

Thomas L. Roberts, Laramie County Attorney, Cheyenne, WY, for Defendants Albany, Campbell, Carbon, Converse, Laramie, Lincoln, Natrona, Niobrara, Sweetwater, Uinta Counties.

*DECISION GRANTING MOTION TO DISMISS FILED BY DEFENDANTS STATE OF WYOMING, BURTON AND DEPARTMENT OF REVENUE AND DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION*

ALAN B. JOHNSON, Chief Judge.

This matter came before the court on November 21, 1996, for hearing on the Motion to Dismiss filed by defendants State of Wyoming, Wyoming Department of Revenue, and R.M. "Johnnie" Burton, Director, Wyoming Department of Revenue (collectively, the state defendants) and on plaintiffs' Motion for a Preliminary Injunction against the state defendants.

## I.

Plaintiffs filed this action to challenge the state defendants' 1996 valuation, assessment and equalization of transportation property within the State of Wyoming as in violation of Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976, (commonly known as the "4–R Act"); 49 U.S.C. § 11501. Plaintiffs Union Pacific and Missouri Pacific (collectively "Union Pacific") also seek a preliminary injunction to restrain or enjoin the state defendants from "valuing, assessing and equalizing plaintiffs' transportation property for the 1996 tax year in violation of Section 306 . . . ."

The state defendants assert Eleventh Amendment immunity from suit in federal court based upon the recent United States Supreme Court case, *Seminole Tribe of Florida v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

## II. Factual and Procedural Background

Under Wyoming law, the Department of Revenue, headed by Mrs. Burton, is charged with the responsibility to annually value and assess Union Pacific's transportation properties located within the State of Wyoming. W.S. § 39–2–201(a)(iv). The Department of Revenue then certifies the proportional share of the value allocated to each county. W.S. § 39–2–201(e)(iii).

On June 25, 1996, the Department of Revenue certified the values to the counties. On June 26, 1996, the Department sent its 1996 Notice of Valuation to Union Pacific.

After such certification, each county has the responsibility to levy and collect the ad valorem taxes. W.S. §§ 39–2–402; 39–2–403; 39–3–101.

On July 24, 1996, Union Pacific appealed the 1996 assessments to the Wyoming State Board of Equalization. The counties have intervened in that appeal. On July 26, 1996, Union Pacific filed the present action.

On November 12, 1996, Union Pacific and the counties entered into a Stipulation for Payment of Disputed Taxes into Interest-Bearing Account. Pursuant to this Stipulation, the full amount of the undisputed taxes will be paid timely to the counties and the

disputed taxes will be paid to the Laramie County Treasurer (acting as agent for all the County defendants) for deposit into an interest bearing account. The counties will then refrain from collecting or causing to be collected any other amount or any interest or penalties that may accrue by reason of nonpayment. Because this Stipulation resolved the matters involved in Union Pacific's Motion for Preliminary Injunction against the counties, it withdrew that motion.

### III. The 4–R Act

#### A. *4–R Act Enacted Pursuant to Commerce Clause*

It is undisputed that Congress enacted the 4–R Act pursuant to its powers under the Interstate Commerce Clause, U.S. Const., Art., 1 § 8, cl. 3.

#### B. *Prohibits Discriminatory Taxation*

The 4–R Act is remedial legislation enacted by Congress in 1976 to "provide the means to rehabilitate and maintain the physical facilities, improve the operations and structure, and restore the financial stability of the railway system of the United States." *Burlington Northern RR Co. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 457, 107 S.Ct. 1855, 1857, 95 L.Ed.2d 404 (1987) (quoting § 101(a) of 4–R Act); *Dept. of Revenue of Oregon v. ACF Industries, Inc.,* 510 U.S. 332, 335–37, 114 S.Ct. 843, 846, 127 L.Ed.2d 165 (1994). "Among the means chosen by Congress to fulfill these objectives, particularly the goal of furthering railroad financial stability, was [the enactment of § 306 as] a prohibition on discriminatory state taxation of railroad property." *Burlington Northern, supra* (explaining history and public policy of Act); *ACF Industries, supra,* (Congress was aware that railroads are "easy prey for State and local tax advisors") (quoting *Western Air Lines, Inc. v. Bd. of Equalization,* 480 U.S. 123, 131, 107 S.Ct. 1038, 1043, 94 L.Ed.2d 112 (1987) (quoting S.Rep. 91–630, p. 3 (1969)). Section 306 provides:

(b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(1) Access rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property.

(2) Levy or collect a tax on an assessment that may not be made under paragraph (1) of this subsection.

(3) Levy or collect an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

(4) Impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the [Surface Transportation] Board under this part.

49 U.S.C. § 11501(b).

#### C. *Union Pacific Alleges Discriminatory Taxation*

Union Pacific alleges that the state defendants have significantly over-valued and over-assessed its property and have failed to equalize the value in a manner necessary to prevent discrimination in comparison with other commercial and industrial taxpayers. The equalization issue in this case involves a comparison with the values placed on property of the mineral industry. Union Pacific also alleges that the state defendants have valued 100% of its intangible personal property, while the intangible personal property of other commercial and industrial taxpayers is exempted pursuant to W.S. § 39–1–201(a)(xxix). The personal property at issue in this case is what is described as "application" or "custom" computer software. Union Pacific also seeks a declaration that the defendants' actions violate section 306 and the U.S. Constitution.

#### D. *Suits under 4–R Act in Federal District Courts*

Congress' action in making unlawful the discriminatory taxation of railroads is bol-

stered by a grant of jurisdiction allowing railroads to challenge discriminatory taxation in federal district courts. This grant includes the power to grant broad relief including declaratory and injunctive relief.

> Notwithstanding section 1341 of title 28 and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section.

49 U.S.C. § 11501(c).

This subsection "declared an exception from the provisions of the Tax Injunction Act, 28 U.S.C. § 1341, allowing railroads to challenge discriminatory taxation in federal district courts." *Burlington Northern*, 481 U.S. at 457–58, 107 S.Ct. at 1858.

As originally enacted in 1976, section 306 expressly provided that the federal district courts had the power "to grant such mandatory or prohibitive injunctive relief, interim equitable relief and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section." *Atchison, Topeka and Santa Fe Railway Co. v. Lennen*, 640 F.2d 255, 258 (10th Cir.1981). However, when the 4–R Act was recodified in 1978, the words "'such mandatory or prohibitive' and 'interim equitable relief' [were] omitted as unnecessary.... The word 'prevent' [was] substituted for 'prevent, restrain, or terminate' to eliminate redundancy...." *Id.* at 258 (quoting Historical and Revision notes to § 11503(c)[1] of the Revised Interstate Commerce Act of 1978).

Thus, although now not specifically enumerated, subsection (c) remains "specific and clear in authorizing the district court to grant injunctive relief to prevent, restrain, or terminate violations of" subsection (b). *Id.* at 258. Similarly, the authority of district courts to enter declaratory judgments regarding discriminatory taxation of railroads made unlawful by subsection (b) was unchanged by later revisions of the 4–R Act.

It was previously well-established that federal district courts have jurisdiction, pursuant to Section 306, to hear 4–R Act cases and to grant the types of relief sought by the complaint in this case—including injunctions. *See Burlington Northern, supra* ("The issue in this case is whether § 306 ... permits review by federal courts of alleged overvaluation of railroad property by State taxation authorities."); *Lennen, supra*, 640 F.2d at 260 (discussing standard for injunction under 4–R Act); *Burlington Northern v. Huddleston*, 94 F.3d 1413 (10th Cir.1996) (upholding permanent injunction against Colorado state defendants in post-*Seminole* case where Eleventh Amendment immunity not raised).

### IV. The *Seminole* Case

As noted above, it was previously well-settled that subsection (c) of section 306 of the 4–R Act granted to federal district courts jurisdiction over Union Pacific's claims that the state defendants violated the Act's prohibition against discriminatory taxation of its property. However, this well-settled precedent must now be re-examined in light of the Supreme Court of the United States' recent decision in *Seminole Tribe of Florida v. Florida*, —— U.S. ——, 116 S.Ct. 1114.

In *Seminole*, the Supreme Court held that Congress lacked the authority under the Indian Commerce Clause to abrogate the Eleventh Amendment immunity of the State of Florida. *Id.* at ——–——, 116 S.Ct. at 1131–32. The Supreme Court therefore affirmed the Court of Appeals for the Eleventh Circuit's decision that dismissed the case for lack of jurisdiction. *Id.* at ——, 116 S.Ct. at 1133. In its holding in *Seminole*, the Supreme Court reexamined and reversed its previous decision in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), wherein it had found that the Interstate Commerce Clause, U.S. Const., Art. 1 § 8, cl. 3, granted the power to abrogate state sovereign immunity in order to regulate interstate commerce. —— U.S. at ——, 116 S.Ct. at 1128.

Based upon the strong holding in *Seminole*, the state defendants now assert Eleventh Amendment immunity from suit in this

---

1. The latest recodification of the 4–R Act omitted and therefore renumbered, sections. *See* Pub.L. 104–88 (effective January 1, 1996). Former § 11503(c) is now § 11501(c), quoted above. *Id.*

court. Accordingly, they move to dismiss this action.

## V. Eleventh Amendment

### A. *The Amendment*

The Eleventh Amendment to the United States Constitution reads:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The state defendants assert Eleventh Amendment immunity from suit in this court.

> The Eleventh Amendment confirms that "the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98 [104 S.Ct. 900, 906–07, 79 L.Ed.2d 67] (1984). Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity. *Id.* at 99 [104 S.Ct. at 907].

*Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985) (citations partially omitted).

> The Eleventh "Amendment is rooted in a recognition that the States, though a union, maintain certain attributes of sovereignty, including sovereign immunity." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146, 113 S.Ct. 684, 689, 121 L.Ed.2d 605 (1993).

### B. *Exceptions to Reach of the Eleventh Amendment*

The United States Supreme Court has held:

> There are, however, certain well-established exceptions to the reach of the Eleventh Amendment. For example, if a State waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action.

*Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985).

Consent to suit is not an issue in this case.

Another exception to the Eleventh Amendment is that:

> [T]he Eleventh Amendment is "necessarily limited by the enforcement provision of § 5 of the Fourteenth Amendment," that is, by Congress' power to "enforce, by appropriate legislation, the substantive provisions of the Fourteenth Amendment." *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). As a result, when acting pursuant to § 5 of the Fourteenth Amendment, Congress can abrogate the Eleventh Amendment without the States' consent. *Id.*

*Id.* (footnote omitted and citations partially omitted).

As noted above, in *Seminole* the Supreme Court overruled *Pennsylvania v. Union Gas Co.,* the only other case where congressional abrogation of the States' Eleventh Amendment immunity has been upheld. —— U.S. at ——, 116 S.Ct. at 1128.

## VI. Procedural Posture of Dismissal Based on Eleventh Amendment

■ The parties dispute which is the appropriate subsection of Fed.R.Civ.P. 12 for the consideration of the state defendants' Motion to Dismiss. The state defendants contend strongly that they are moving under Fed.R.Civ.P. 12(b)(1), based upon lack of subject matter jurisdiction. Union Pacific contends that the motion must be construed as a Fed.R.Civ.P. 12(b)(6) motion, based upon failure to state a claim.

The case law in this area does not provide a definitive answer. The *Seminole* case affirmed the Eleventh Circuit's dismissal for lack of subject matter jurisdiction based on the Eleventh Amendment. —— U.S. at ——, 116 S.Ct. at 1133. Similarly, other courts have characterized dismissal on the basis of Eleventh Amendment immunity as a lack of federal subject matter jurisdiction. In *Wilson–Jones v. Caviness,* 99 F.3d 203, 206 (1996), the Sixth Circuit sua sponte raised the issue of lack of subject matter jurisdiction in light of *Seminole.* That court found

*Seminole* controlling and concluded that federal courts did not have jurisdiction over an action against a state for violation of the Fair Labor Standards Act (FLSA). *Id.* at 211. In the case *Raper v. State of Iowa,* 940 F.Supp. 1421, 1423 (S.D.Iowa 1996), another FLSA case, the district court held that a *Seminole*-based challenge to an alleged lack of subject matter jurisdiction should be resolved as a motion to dismiss pursuant to Rule 12(b)(1). *Accord Miles v. Kilgore,* 928 F.Supp. 1071, 1084 (N.D.Ala.1996) (remanding civil rights claim against sheriff on basis of Eleventh Amendment immunity "for lack of subject matter jurisdiction").

However, still other courts have characterized the issue of dismissal due to Eleventh Amendment immunity slightly differently. *See e.g. In re Prairie Island Dakota Sioux,* 21 F.3d 302, 305 (8th Cir.1994) ("We find ... that sovereign immunity is a jurisdictional consideration separate from subject matter jurisdiction and that the district court did not abuse its discretion in first determining it lacked federal question jurisdiction").

At least one court has characterized dismissal under the Eleventh Amendment as a Rule 12(b)(2) matter, namely, "lack of jurisdiction over the person" of the State. *PEAKSolutions Corp. v. State of Ohio (In re PEAKSolutions Corp.),* 168 B.R. 918, 922 (Bankr.D.Minn.1994). The *PEAKSolutions* case was brought under Fed.R.Civ.P. 12(b)(1), but decided under Rule 12(b)(2), both made applicable to that bankruptcy adversary proceeding by Fed.R.Bankr.P. 7012(b). 168 B.R. at 922 n. 10.

In their noted treatise, Wright, Miller & Cooper characterize the Eleventh Amendment as a "jurisdictional bar" but note that its "precise status has never been defined." 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure § 3524, at 167 (2d ed. 1984).

Union Pacific cites *ITSI TV Productions v. Agric. Ass'n.,* 3 F.3d 1289, 1291 (9th Cir. 1993), for the proposition that "Eleventh Amendment immunity, whatever its jurisdictional attributes, should be treated as an affirmative defense." Thus, it contends that this matter must be treated as a Rule 12(b)(6) motion. Therefore, it contends that

under the standards for the granting of 12(b)(6) motions, this court must adopt as true the factual allegations set forth in its complaint, draw all reasonable inferences from those allegations in its favor and deny the motion unless it can prove no set of facts that would entitle it to relief.

This court disagrees. The cases cited by Union Pacific do not support its contention that the issue of Eleventh Amendment immunity can be decided only under Rule 12(b)(6).

Two of the cases cited by Union Pacific in this area involve factual disputes over whether a particular entity is an "arm of the state" and it is in this context that they discuss factual inferences. In *ITSI TV Productions, supra,* the Ninth Circuit applied its "five-part test for use in evaluating a litigant's claims that it is an 'arm of the state' entitled to Eleventh Amendment immunity." 3 F.3d at 1292. The *ITSI TV* decision does not specify under which subsection of Rule 12(b) the trial court considered the motion. However, because that court permitted limited discovery and made factual findings, it does not appear that the decision was rendered under the standard for deciding Rule 12(b)(6) motions. The case *Christy v. Pennsylvania Turnpike Comm'n,* 54 F.3d 1140 (3rd Cir. 1995), involved Eleventh Amendment immunity based on the defendants' contention, raised pursuant to motions for summary judgment, that the commission was an "arm of the state." *Id.* at 1144 (concluding that party asserting immunity "bears the burden of production and persuasion with respect to factual questions when a putative state entity claims immunity under the Eleventh Amendment").

The case *Smith v. Wisconsin Dept. of Agriculture,* 23 F.3d 1134, 1138 (7th Cir. 1994), involved the district court's dismissal of the Department where its claim of immunity was raised pursuant to a motion for summary judgment. In *Smith,* the Seventh Circuit held it must follow its own precedent holding "squarely" that "federal courts"—per the '*Hans [v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)] doctrine'—do not have subject matter jurisdiction over suits

against a state." 23 F.2d at 1140 (following *Crosetto v. State Bar of Wisconsin,* 12 F.3d 1396 (7th Cir.1993)). Accordingly, finding no subject matter jurisdiction over the suit against a state agency, the Seventh Circuit ordered the cases remanded back to state court. *Id.* at 1144.

Of the cases cited by Union Pacific in this area, only *Baxter by Baxter v. Vigo County School Corp.,* 26 F.3d 728, 730 (7th Cir. 1994), involved claims of Eleventh Amendment immunity raised pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim. However the *Baxter* court noted that although it must "accept as true all well-pleaded factual allegations and the inferences reasonably drawn from them" it was "not compelled to accept, however, conclusory allegations concerning the legal effect of the facts set out in the complaint." *Id.*

In this court's opinion, the only conclusion to be drawn from the various cases in this area is that a claim of Eleventh Amendment immunity may be raised and decided pursuant to the procedural mechanism invoked by the defendant making the claim, in this case Rule 12(b)(1).

The Supreme Court's *Seminole* decision provides authority for deciding the state defendants' claim of Eleventh Amendment immunity as a matter of subject matter jurisdiction. —— U.S. at ——, 116 S.Ct. at 1132 ("Petitioner's suit against the State of Florida must be dismissed for a lack of jurisdiction.").

■ Further, even assuming this matter was to be determined under Rule 12(b)(6), a rule not invoked by the state defendants, that rule cannot be construed as Union Pacific suggests. Otherwise, this court would have to resolve all factual issues in favor of a plaintiff and deny a claim of Eleventh Amendment immunity whenever a plaintiff alleges: (1) Congress had the power under the Fourteenth Amendment to abrogate sovereign immunity; and, (2) it is seeking only prospective relief. This would allow any plaintiff to defeat claims of Eleventh Amendment immunity in the early stages of the case simply as a matter of clever pleading. Such a result is insupportable. *Baxter,* 26

F.3d at 730 (court not bound to accept conclusory allegation concerning legal effect of factual allegations). As the Supreme Court has made clear, the Eleventh Amendment is not merely a defense from liability, but confers immunity from suit. *Puerto Rico Aqueduct,* 506 U.S. at 144–47, 113 S.Ct. at 688.

The Eleventh Amendment does not exist solely in order to "preven[t] federal court judgments that must be paid out of the State's treasury," *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, ——, 115 S.Ct. 394, 404, 130 L.Ed.2d 245 (1994); it also serves to avoid "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Puerto Rico Aqueduct,* 506 U.S. at 146, 113 S.Ct. at 689 (internal quotation marks omitted in original).

*Seminole,* —— U.S. at ——, 116 S.Ct. at 1124.

### VII. After Seminole

#### A. Analysis of Congressional Power to Abrogate After Seminole

*Seminole* teaches that to abrogate state immunity, Congress must first unequivocally express its intent to abrogate the immunity and, second, act pursuant to a valid exercise of power. —— U.S. at ——, 116 S.Ct. at 1124.

#### B. Congressional Intent to Abrogate Immunity in 4–R Act

In order to find Congressional intent to abrogate the States' immunity from suit such intent must be obvious from a clear legislative statement. Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself. *Atascadero,* 473 U.S. at 242–43, 105 S.Ct. at 3147–48. However, "[a] general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." *Id.* at 246, 105 S.Ct. at 3149.

Based upon the cases cited in section III(D), supra, an examination of the Act and cases construing the Act, this court finds Section 306 contains a clear legislative statement of the intent of Congress to abrogate the States' immunity from suit in federal

court for cases enforcing rights under the 4–R Act.

### C.  Congressional Power to Abrogate

■ Adopting the approach used by the Court in *Seminole,* this court's "inquiry into whether Congress has the power to abrogate unilaterally the States' immunity from suit is narrowly focused on one question: Was the Act in question passed pursuant to a constitutional provision granting Congress the power to abrogate?" *Id.* at ——, 116 S.Ct. at 1125.

In this case it is undisputed that Congress enacted the 4–R Act pursuant to the Interstate Commerce Clause and that the Supreme Court in *Seminole* case has now held that Congress lacks the power to abrogate Eleventh Amendment immunity under the Interstate Commerce Clause.  The state defendants contend that the inquiry should end here—Congress lacked the power to abrogate Eleventh Amendment immunity pursuant to the Interstate Commerce Clause and therefore this court lacks subject matter jurisdiction over this action.

Not surprisingly, Union Pacific sees the effect of *Seminole* differently.  Union Pacific contends that, having found an express Congressional intent to abrogate immunity, this court should then proceed to determine whether Congress had the power to do so pursuant to § 5 of the Fourteenth Amendment—a power to abrogate that was expressly reaffirmed in *Seminole.*

In support of its position, Union Pacific cites a recent series of post-*Seminole* cases, one series involving the FLSA, *e.g. Raper v. State of Iowa, supra,* and the other series involving the Rehabilitation Act of 1973, *e.g. Niece v. Fitzner,* 941 F.Supp. 1497 (E.D.Mich.1996).  In these cases, courts have undertaken the examination of whether or not Congress had the power to abrogate Eleventh Amendment immunity from suit pursuant to § 5 of the Fourteenth Amendment.

Generally, courts have found that Congress did enact the Rehabilitation Act pursuant to its explicit power to enforce the Fourteenth Amendment and therefore the second prong of *Seminole* is satisfied and Eleventh Amendment immunity was properly abrogated.  *e.g. Niece,* 941 F.Supp. at 1504; *Mayer v. University of Minn.,* 940 F.Supp. 1474, 1479 (D.Minn.1996).

Courts have generally reached the opposite conclusion for the FLSA.  *e.g. Raper,* 940 F.Supp. at 1425; *Wilson–Jones,* 99 F.3d at 211.

Union Pacific contends that this court should adopt the analysis employed by either the court in *Raper* or by the court in *Wilson–Jones* and analyze whether Congress acted pursuant to a valid exercise of power under § 5 of the Fourteenth Amendment.

Having carefully considered the matter, this court concludes that there is very little difference between the tests used by those courts.  In *Wilson–Jones,* the court employed a three-part analysis adopted from *Katzenbach v. Morgan,* 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966).  99 F.3d at 209–10.  However, the court proceeded to resolve the issue "by focusing on the first *Katzenbach* factor: whether one may 'regard the legislation as an enactment to enforce the' Fourteenth Amendment." *Id.* at 209.

In *Raper,* the court examined whether "the FLSA or its amendments were enacted to further anti-discriminatory or equal protection objectives." 940 F.Supp. at 1426.  The *Raper* court, borrowing language from the Supreme Court case of *EEOC v. Wyoming,* 460 U.S. 226, 243 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983), also, articulated the dispositive issue as whether there was a "'legislative purpose or factual predicate' which would have supported the FLSA's passage under the Fourteenth Amendment." *Id.* at 1425.

### D.  The 4–R Act and the Fourteenth Amendment

■ This court need not adopt either the *Raper* analysis or the *Wilson–Jones* analysis because under any test the court cannot find Congress could have enacted the 4–R Act pursuant to Section 5 legislation to enforce the Fourteenth Amendment.

As discussed above, the purpose of the 4–R Act, as originally enacted, was to "provide

the means to rehabilitate and maintain the physical facilities, improve the operations and structure, and restore the financial stability of the railway system of the United States." *Burlington Northern,* 481 U.S. at 457, 107 S.Ct. at 1857. These are economic objectives designed to further commerce by strengthening the transportation infrastructure of the United States. This was surely an admirable goal and it was well within the power of Congress acting pursuant to the Interstate Commerce Clause to further such objectives. However, such commercial objectives are far afield from the equally admirable objectives of the Fourteenth Amendment.

It is only in relation to *one* of "the *means* chosen by Congress to fulfill these objectives, particularly the goal of furthering railroad financial stability," that discrimination is mentioned. *Burlington Northern, supra* (underlined emphasis added).

As recodified in 1996, the legislative purpose of the 4–R Act is now found at 49 U.S.C. § 10101. That section sets forth, in fifteen numbered paragraphs, the policy of the United States in regulating the railroad industry. Many of these fifteen subsections are themselves divided into yet more clauses setting forth additional objectives. Most of the objectives are commercial and are aimed at furthering commerce by increasing competition and other free market forces. Some of the policies evidence an intent to further both commercial objectives as well as other national objectives. *E.g.* 49 U.S.C. § 10101(4) ("to ensure the development and continuation of a sound rail transportation system with effective competition among rail carriers and with other modes, to meet the needs of the public and the national defense"). *Accord* 49 U.S.C. § 10101(8) (to operate ... without detriment to the public health and safety"). Others, such as subsection (11) ("to encourage fair wages and safe and suitable working conditions"), further commerce by promoting the well-being of its participants. It is only one clause of subsection (12) that discusses discrimination as an objective:

(12) to prohibit predatory pricing and practices, to avoid undue concentrations of market power, and to prohibit unlawful discrimination.

49 U.S.C. § 10101(12) (underlined emphasis added).

Viewed as a total, the legislative purpose and predicate cannot be read as evidencing a purpose to enforce rights under the Fourteen Amendment. This court cannot find that there is any evidence by way of a factual predicate to support a finding that the 4–R Act was enacted to further anti-discriminatory or equal protection claims. Nor can this court regard the legislation as an enactment to enforce the Fourteenth Amendment.

Accordingly, Union Pacific's claim that Congress could have enacted the 4–R Act under the Fourteenth Amendment fails. Therefore the court will grant the state defendants' Motion to Dismiss as to the State of Wyoming and its Department of Revenue. However, further inquiry is necessary for defendant Burton.

## VIII. Ex Parte Young and Defendant Burton

In *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court found federal jurisdiction over a suit against a state official when the suit sought only prospective injunctive relief to end a continuing violation of federal law.

Union Pacific contends that, even if the State of Wyoming and its Department of Revenue are entitled to immunity under the Eleventh Amendment, Mrs. Burton can still be subject to suit to enjoin the continuing violation of federal law against discrimination against railroads in property taxes.

Mrs. Burton contends that the 1996 assessments are made and therefore there is only a completed alleged violation of federal law.

In a recent case, the Tenth Circuit reviewed the *Ex Parte Young Doctrine. Ponca Tribe of Oklahoma v. State of Oklahoma,* 37 F.3d 1422, 1436–37 (10th Cir.1994). The *Ponca Tribe* case is now reversed under *Seminole* because it involved the very issue decided in that case. *Id.* However, *Ponca Tribe* also dismissed the Tribes' suits against the Governors of Oklahoma and New Mexico on the basis of the Eleventh Amendment. The *Ponca Tribe* court's discussion of the

only remedy that can be required of a state official under *Ex Parte Young* remains good law and is helpful to the present case.

A critical limitation on [the *Ex Parte Young* ] doctrine however, is that a federal court may only order a state officer to perform a ministerial act. *Ex Parte Young,* 209 U.S. at 158, 28 S.Ct. at 453 (explaining that the injunction "can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in its nature, refuses or neglects to take such action.").

37 F.3d at 1436.

Union Pacific cites the case *Powder River Basin Resource Council v. Babbitt,* 54 F.3d 1477, 1483 (10th Cir.1995), for the proposition that because Union Pacific seeks to enjoin current and continuing violation of Section 306, Mrs. Burton remains a proper defendant. However, in *Powder River* the court held that it was the declaratory relief sought, not the injunctive relief, that was prospective only and therefore could be pursued against the state official under *Ex Parte Young* doctrine. *Id.*

In this case, it is clear from Union Pacific's brief and its oral argument that the relief it seeks regarding defendant Burton is injunctive relief. "Union Pacific is seeking prospective injunctive relief to enjoin the 'current' violation of Section 306 which Mrs. Burton is undertaking in her capacity as the Director of the Department of Revenue." Plaintiffs' Memorandum in Opposition to Wyoming defendants' Motion to Dismiss at 20. Although the brief makes passing reference to Union Pacific's claim for declaratory relief, the brief does not state it is seeking such declaratory relief against Mrs. Burton.

In this case, the court must agree with the position advanced by the state defendants. The assessments are complete and were certified to the counties. Mrs. Burton's nondiscretionary tasks involved in the process are complete. Although Union Pacific contends that the existence of the allegedly unlawful assessments is a current and continuing violation of the 4–R Act, at this time there are no acts to enjoin that can be enjoined under the *Ex Parte Young* doctrine.

Further, even if Union Pacific were seeking declaratory relief against defendant Burton, the only declaratory relief that Union Pacific seeks is related to the 1996 assessments. Complaint at 12, lines 3–8. Those assessments are completed insofar as defendant Burton is concerned. Declaratory relief would necessarily involve only violations of the 4–R Act *in the past* when the 1996 assessments were made and certified.

The completed and certified assessments at issue in this case are distinguishable from the alleged continuing violation of federal law found in *Powder River, supra.* In *Powder River,* the court found that, at the time the case was filed, an allegedly defective Wyoming *statute* was still in effect and because of that statute, Wyoming's surface mining regulatory scheme allegedly continued to violate the Surface Mining Control and Reclamation Act of 1977. 54 F.3d at 1483.

In this case, because the assessments are complete and the certification for those assessments is complete, there is only a completed, and not a continuing, alleged violation of federal law. Therefore, declaratory relief is not available under the *Ex Parte Young* doctrine against defendant Burton. *Green v. Mansour,* 474 U.S. at 74, 106 S.Ct. at 429.

Union Pacific contends that if this court finds that there is no continuing violation of federal law it will be unable to challenge the assessments in the future because there will always be a timing issue. Regardless, this court cannot expand the scope of the *Ex Parte Young* doctrine to provide a federal court forum for Union Pacific to assert its rights under the 4–R Act if doing so would violate the immunity from suit in federal courts granted to the state defendants under the Eleventh Amendment.

Accordingly, the court will grant the Motion to Dismiss as to Mrs. Burton in her capacity as Director of the Wyoming Department of Revenue.

### IX. Preliminary Injunction

The standard for the grant of a preliminary injunction under the 4–R Act is set forth in *Atchison, Topeka and Santa Fe Ry. Co. v. Lennen,* supra, 640 F.2d at 258–60. Union Pacific has submitted a copy of this court's 1988 decision in *Union Pacific R.R. v. Wyoming Dep't of Revenue and Taxation,*

No. C88–121–J (D.Wyo.1988) applying this standard and issuing a preliminary injunction.

However, those cases were predicated upon this court's jurisdiction over 4–R Act cases brought against a State and its agencies. Having determined today that Congress did not have the power to abrogate the States' Eleventh Amendment immunity from suit in this court under the 4–R Act, this court has no jurisdiction to issue such an injunction. Accordingly, Union Pacific's Motion for a Preliminary Injunction must be denied.

### X. Conclusion

This court's opinion today in no way reaches the issue of the general constitutionality of the 4–R Act as applied to the states. Therefore, the holding does not permit states to avoid their legal duty to comply with the provisions of 49 U.S.C. § 11501(b). Instead, the court is holding that 49 U.S.C. § 11501(c), which purports to give federal courts jurisdiction over a railroad's suit against a state under the 4–R Act, does so in violation of the Eleventh Amendment and therefore this case must be dismissed for lack of jurisdiction. Accordingly, the dismissal of the state defendants will be without prejudice in order to allow Union Pacific to pursue its rights under 49 U.S.C. § 11501 in an appropriate state forum.