**UNION PACIFIC RAILROAD COMPANY, Plaintiff,**

v.

**STATE OF UTAH et al., Defendants.**

No. CIV. 2:97–CV–341C.

United States District Court,
D. Utah,
Central Division.

Oct. 28, 1997.

Robert A. Peterson, Giauque, Crockett, Bendinger & Peterson, Salt Lake City, UT, for Plaintiff.

Kelly W. Wright, Utah Attorney General's Office, Bill T. Peters, Parsons, Davies, Kinghorn & Peters, Salt Lake City, UT, for Defendants.

## ORDER

CAMPBELL, District Judge.

This case is now before the court on the following three motions: (1) the State defen-

dants' motion to dismiss plaintiff's complaint based on the Eleventh Amendment; (2) the State defendants' motion to dismiss plaintiff's complaint based on issue preclusion; and (3) the county defendants' motion to dismiss plaintiff's complaint for failure to join an indispensable party pursuant to Fed.R.Civ.P. 19. A hearing on these motions was held on August 11, 1997. Robert Peterson appeared on behalf of plaintiff. Kelly Wright appeared on behalf of the State defendants; Bill Peters and David Scofield appeared on behalf on the county defendants. The court has considered the arguments of counsel made at the hearing and the memoranda submitted by the parties in this matter, and finds as follows:

**BACKGROUND**

Plaintiff, the Union Pacific Railroad Company ("Union Pacific"), has brought this action against the State of Utah, the Utah State Tax Commission, individual members of the Tax Commission (hereinafter collectively referred to as "the State defendants"), various counties of the State of Utah, and the individual treasurers of the defendant counties (hereinafter collectively referred to as "the county defendants"). Plaintiff claims that for the tax year 1997, defendants are in violation of § 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 (" the 4–R Act"). Plaintiff seeks injunctive relief, asking this court to enjoin defendants from imposing the 1997 valuation and assessment and from levying or collecting any property taxes based upon the valuation and assessment. Plaintiff also requests declaratory relief, asking for an order that defendants' 1997 valuation and assessment and attempted levy and collection of the 1997 property taxes violate § 306.

Defendants have brought several motions to dismiss plaintiff's complaint. The State defendants have moved to dismiss the complaint on the ground that suit against them is barred by the Eleventh Amendment. The State defendants have also moved to dismiss the complaint, based on the decision in *Union Pacific R.R. Co. v. Burton*, 949 F.Supp. 1546 (D.Wyo.1996), under the doctrine of issue preclusion. The county defendants have moved to dismiss the complaint against them

claiming that should the court dismiss the State defendants from this action, the entire lawsuit must be dismissed for failure to join an indispensable party pursuant to Fed. R.Civ.P. 19.

**DISCUSSION**

A. *Overview of the 4–R Act*

Congress passed the 4–R Act in 1976 to "provide the means to rehabilitate and maintain the physical facilities, improve the operations and structure, and restore the financial stability of the railway system of the United States." *Burlington Northern R.R. Co. v. Oklahoma Tax Comm'n*, 481 U.S. 454, 457, 107 S.Ct. 1855, 1857, 95 L.Ed.2d 404 (1987) (quoting § 101(a) of the 4–R Act). Congress found that states often taxed railroads in a discriminatory manner and, in furtherance of its goal of restoring the railroads' financial stability, passed § 306, now codified as 49 U.S.C. § 11501. Section 306 prohibits the assessment, levying, or collection by a state of a discriminatory tax.

■ Congress gave federal courts jurisdiction, concurrent with state courts, to prevent violations of § 306. *See* 49 U.S.C. § 11501(c). Accordingly, § 306 is an exception to the Tax Injunction Act, 28 U.S.C. § 1341, which prohibits federal courts from enjoining the assessment and collection of taxes imposed under state law. *See Burlington Northern*, 481 U.S. at 457–58, 107 S.Ct. at 1858. In explaining why Congress gave jurisdiction to federal courts to hear matters brought under § 306, the court in *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 252 (4th Cir.1993), explained, "The history of state discrimination against railroads—including the railroads' experience in the state courts—convinced Congress to restore the power of the federal courts to enjoin discriminatory state taxation of railroads." The court continued its discussion, stating, "Congress concluded that a federal forum should be available to railroads seeking to escape the assessment and collection of discriminatory taxes." *Id.*

B. *The Eleventh Amendment*

■ The Eleventh Amendment to the United States Constitution bars suit in feder-

al court against a state or a state agency by a private citizen.[1] *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986) (citing *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). The Eleventh Amendment bar to suit, however, is not absolute. The Supreme Court recently discussed the reach of the Eleventh Amendment, stating, "The Amendment, in other words, enacts a sovereign immunity from suit, rather than a nonwaivable limit on the federal judiciary's subject-matter jurisdiction." *Idaho v. Coeur d'Alene Tribe of Idaho,* —— U.S. ——, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997). Congress can abrogate state sovereign immunity if Congress clearly expresses its intention to abrogate the immunity and does so under a proper exercise of its power. *See Aaron v. Kansas,* 115 F.3d 813, 814 (10th Cir.1997) (internal citations omitted). Until its decision in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the Supreme Court had recognized two sources of authority under which Congress could abrogate state sovereign immunity: the interstate commerce clause and § 5 of the Fourteenth Amendment.[2] In *Seminole Tribe,* however, the Supreme Court determined that the interstate commerce clause does not provide Congress with the authority to abrogate a state's Eleventh Amendment immunity. 517 U.S. at 63–66, 116 S.Ct. at 1128. Section 5 of the Fourteenth Amendment remains a valid source of authority to abrogate the states' sovereign immunity. *Id.*

In light of the Supreme Courts' ruling in *Seminole Tribe,* the State defendants have moved for dismissal of the complaint against them.[3] While the State defendants do not dispute that Congress, in passing § 306, intended to abrogate Eleventh Amendment immunity, they do challenge whether Congress, in enacting the 4–R Act, acted under a proper exercise of authority, that is, after *Seminole Tribe,* § 5 of the Fourteenth Amend-

ment. The State defendants argue that the language of § 306 clearly reveals that Congress enacted the 4–R Act under its power to regulate interstate commerce. They point to § 306(b) which states, "The following acts unreasonably burden and discriminate against interstate commerce . . . ." 49 U.S.C. § 11501(b).

Plaintiff, however, argues that although Congress did not cite § 5 of the Fourteenth Amendment as authority for enacting § 306, such a recital is not necessary if Congress had the power to act under § 5. Plaintiff contends that the type of discriminatory taxation that § 306 was designed to prohibit implicates the Equal Protection Clause. Thus, according to plaintiff, Congress had the power to enact the 4–R Act under § 5 of the Fourteenth Amendment.

Plaintiff is correct that discriminatory taxes can raise equal protection concerns. *See Allegheny Pittsburgh Coal v. Webster County,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989) (holding that West Virginia property tax discriminated against coal companies in violation of Equal Protection Clause). Plaintiff is also correct when it asserts that recitation by Congress of the power under which it enacted the legislation is not determinative. As stated by the Sixth Circuit: "A source of power has been held to justify an act of Congress even if Congress did not state that it rested the act on the particular source of power." *Wilson–Jones v. Caviness,* 99 F.3d 203, 208 (6th Cir.1996), *modified on other grounds,* 107 F.3d 358 (6th Cir.1997) (per curiam). However, it is also clear that a court must not " 'quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment.' " *Gregory v. Ashcroft,* 501 U.S. 452, 469, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991) (quoting *Pennhurst State*

---

1. The Eleventh Amendment to the Constitution reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

2. Section 5 provides: "The Congress shall have power to enforce by appropriate legislation, the provisions of (the Fourteenth Amendment)."

3. The plaintiff does not claim, nor is there any evidence, that the State defendants have waived their Eleventh Amendment immunity.

*School v. Halderman,* 451 U.S. 1, 16, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981)).

In *Wilson–Jones,* the Sixth Circuit held that after the Supreme Court's ruling in *Seminole Tribe,* plaintiffs could not bring an action against the Ohio Civil Rights Commission alleging violations of the Fair Labor Standards Act (FLSA). 99 F.3d at 210. The *Wilson–Jones* court found that enactment of the FLSA was not within the powers given to Congress by § 5 of the Fourteenth Amendment. *Id.* The court cautioned that § 5 should not be so broadly interpreted so as to "give Congress carte blanche to pass any legislation rationally related to any Fourteenth Amendment end ...." *Id.* at 209. Focusing on the first factor of the three-factor test set forth in *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 1724, 16 L.Ed.2d 828 (1966)[4], that is, whether one may regard the statute as an enactment to enforce the Equal Protection Clause, the court concluded that there was "no sufficiently strong logical connection between the aim of the [FLSA]—to increase the wages and shorten the hours of certain employees—and central, obvious Fourteenth Amendment concerns." *Id.* at 210. The court stated that "in the absence of explicit comment by Congress, only efforts to remedy discrimination against a class of persons that Fourteenth Amendment jurisprudence has already identified as deserving special protection " is properly viewed as legislation passed pursuant to § 5. *Id.* The Tenth Circuit cited *Wilson–Jones* with approval in *Aaron v. State of Kansas,* 115 F.3d 813, 817 (10th Cir.1997) (holding that aims of wage and overtime provisions of FLSA were not sufficiently connected to Fourteenth Amendment concerns so as to fall under Congress § 5 powers).

■ Here, although Congress in passing the 4–R Act was clearly concerned about the discriminatory taxation of railroads, it cannot be said that there is a sufficiently strong connection between protection of railroads and recognized Fourteenth Amendment goals that would permit a conclusion that the 4–R Act, and specifically § 306, is legislation passed to enforce the Fourteenth Amendment. This is particularly true in view of the clear intent of Congress to pass the 4–R Act to relieve burdens placed on interstate commerce by discriminatory taxation of the railroads. Accordingly, the court concludes that § 306 was not passed under Congress' § 5 powers and grants the State defendants' motion to dismiss plaintiff's complaint, but only as it pertains to the State of Utah and the Utah State Tax Commission.

## C. *Ex Parte Young and the Individual Members of the Tax Commission*

■ In *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court held that suit can be brought in a federal court against state officers to enjoin official actions that violate federal law, even if the state itself is immune from suit under the Eleventh Amendment. Injunctive relief is available so long as there is an ongoing violation of federal law and the relief sought is prospective, and not designed to remedy past violations of federal law. *Coeur d'Alene Tribe of Idaho,* — U.S. at ——, 117 S.Ct. at 2043 (1997) (O'Connor, J., concurring in part and concurring in the judgment) (internal citations omitted).

In *Seminole Tribe,* the Court held that the plaintiff, the Seminole Tribe of Florida, could not avail itself of the *Ex parte Young* exception and bring suit against the state governor. 517 U.S. at 74–75, 116 S.Ct. at 1133. The Court's refusal to apply the *Young* doctrine was based on the existence of a detailed remedial scheme created by Congress to enforce the statutory right under which the plaintiff was seeking relief. *Id.* at 73–74, 116 S.Ct. at 1132. The Court concluded that in view of the Congressionally created remedial scheme, suit should not be permitted against the individual officer in an attempt to create an additional remedy. *Id.*

---

4. The three-part test under *Katzenbach v. Morgan* to determine whether legislation was enacted under § 5 is "whether a statute (1) may be regarded as an enactment to enforce the Equal Protection Clause, (2) whether it is 'plainly adapted to that end,' and (3) whether it is not prohibited by but is consistent with 'the letter and spirit of the Constitution.' " *Wilson–Jones,* 99 F.3d at 209 (internal citations omitted).

The principal opinion by Justice Kennedy on the *Young* question in *Coeur d'Alene Tribe*, nonetheless, makes clear that the doctrine is very much alive. ("We do not, then, question the continuing validity of the *Ex parte Young*.") —— U.S. at ——, 117 S.Ct. at 2034. However, in an opinion by Justice O'Conner, concurring in part and concurring in the judgment, in which Justices Scalia and Thomas joined, Justice O'Conner criticized the rationale of Justice Kennedy, who called for a case-by-case balancing approach focusing on the availability of a state forum and the importance of the federal right implicated as the correct method to determine whether a suit should be permitted under *Ex parte Young*. —— U.S. at ——, 117 S.Ct. at 2045. Although agreeing that *Ex parte Young* should not be applied because of the particular facts of the case, Justice O'Conner left no doubt that the case-by-case approach advocated by Justice Kennedy was not an acceptable method of deciding when to apply the *Young* exception, stating: "In sum, the principal opinion replaces a straightforward inquiry into whether a complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective with a vague balancing test that purports to account for a 'broad' range of unspecified factors." *Id.* at ——, 117 S.Ct. at 2047.

■ In the present case, the answer to the "straightforward inquiry" of whether plaintiff has alleged an ongoing violation of federal law and whether prospective relief is sought is in the affirmative. The State defendants base their contention that *Ex parte Young* does not apply on the fact that the Utah State Tax Commission has already made its assessment of plaintiff's taxable property. According to the State defendants, because the assessment has taken place, there is no ongoing violation of the 4–R Act and plaintiff is seeking only retroactive relief. Plaintiff points out, however, that the Tax Commission and its members are still active participants in the alleged discriminatory taxing process. Plaintiff has appealed the original assessment and therefore, resolution of the appeal and a final determination of the correct assessment is yet to be made by the Tax Commission. Section 306 makes the levy and collection of discriminatory taxes unlaw-

ful. These acts, which are the obligation of the county defendants, have not yet occurred and are dependent upon the Tax Commission's final determination of the assessment.

■ Plaintiff also seeks declaratory relief, asking for a declaration that the assessment by the State defendants and the levy and collection based on that assessment, be declared unlawful and in violation of § 306. The Tenth Circuit in *Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1483 (10th Cir.1995), held that even though an action might include "an aspect of retroactive relief," it was not barred because the plaintiff sought declaratory relief to prevent an ongoing violation of federal law. "Declaratory judgments are construed as retroactive relief only when '[t]here is no claimed continuing violation of federal law, and therefore no occasion to issue an injunction.'" *Powder River Basin Resource Council*, 54 F.3d at 1483 (quoting *Green v. Mansour*, 474 U.S. 64, 73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985)). "Declaratory relief is prospective when sought to prevent a state's current violation of the law." *Id.* Here, there is no question that there is an allegation of a continuing violation of federal law, § 306, by the State defendants and that injunctive relief could be granted against the State defendants as well as the county defendants.

Because Union Pacific has alleged a continuing violation of federal law and the relief sought is prospective, the court finds that suit can proceed against the individual State defendants under *Ex Parte Young* and denies the State defendants' motion to dismiss as it applies to individual members of the Utah State Tax Commission.

### D. *Issue Preclusion*

■ The State defendants contend that plaintiff's complaint should be dismissed because the issue of whether the Eleventh Amendment bars Union Pacific from asserting a claim under the 4–R Act against a state party was previously decided against Union Pacific in *Union Pacific R.R. Co. v. Burton*, 949 F.Supp. 1546 (D.Wyo.1996). Because this court has decided that suit cannot proceed against the State of Utah and the Utah

State Tax Commission, a decision in harmony with the Wyoming decision, the only question remaining is whether the Wyoming court's decision that the *Ex Parte Young* exception was not available requires a different result than the decision reached here. For several reasons, the court concludes that it does not.

 First, the Wyoming court found that the decision in *Powder River Basin Resource Council,* was not applicable because Union Pacific was essentially seeking injunctive, not declaratory relief. *Burton,* 949 F.Supp. at 1555. Second, the court found that as far as the role of Mrs. Burton, the Director of the Wyoming Department of Revenue, was concerned, her "non-discretionary tasks involved in the (assessment) process are complete." *Id.* The court then concluded that there was no on-going violation of federal law and no acts to be enjoined under *Ex Parte Young. Id.* These findings by the Wyoming court are largely factual and based on the Wyoming statutory scheme. There is no evidence that the Wyoming tax assessment procedures are substantially similar to the Utah procedures. Finally, it should be noted that resolution of a question of law by another district court is not binding on this court.

### E. *Failure to Join an Indispensable Party*

The county defendants have moved the court to dismiss this action against them on the ground that because the State defendants are immune from suit under the Eleventh Amendment and should be dismissed from this action, suit against the counties must also be dismissed pursuant to Fed.R.Civ.P. 19. Because the court has denied the motion of the individual State defendants to be dismissed from this suit, the county defendants' motion is also denied; complete relief can be given in this forum with the presence of the individual State defendants.

### CONCLUSION

For the above reasons stated above, the court makes the following rulings:

1. The State defendants' motion to dismiss plaintiff's complaint against the State of Utah and the Utah State Tax Commission is GRANTED.

2. The State defendants' motion to dismiss plaintiff's complaint against individual members of the Utah State Tax Commission: W. Val Oveson, Richard B. McKeown, Joe B. Pacheco, and Alice Shearer, is DENIED.

3. The State defendants' motion to dismiss plaintiff's complaint based on issue preclusion is DENIED.

4. The county defendants' motion to dismiss plaintiff's complaint for failure to join an indispensable party is DENIED.